# IN THE SUPREME COURT OF TEXAS

No. 14-0903

CLINT INDEPENDENT SCHOOL DISTRICT, PETITIONER,

v.

SONIA HERRERA MARQUEZ, CLAUDIA GARCIA, AND ALICIA GOMEZ, FOR AND ON
BEHALF OF THEIR MINOR CHILDREN, RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE EIGHTH DISTRICT OF TEXAS

**Argued November 4, 2015**

JUSTICE BOYD delivered the opinion of the Court.

This Court has previously addressed, and is even now considering, a well-known series of

constitutional challenges to the way Texas funds its public schools.[1] In each of these cases, school

districts and others alleged that the State's school-finance system unconstitutionally raises and

distributes money to support the various school districts throughout the state.[2] This case presents

a new twist: students' parents allege that a single school district unconstitutionally distributes its

funds among the schools within the district. We cannot address the merits of these claims today,

however, because we must first answer the preliminary question of whether Texas law requires the

---

[1] *See Williams v. Tex. Taxpayer & Fairness Coal.*, No. 14-0776 (Tex. argued Sept. 1, 2015); *Neeley v. W. Orange–Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746 (Tex. 2005); *W. Orange–Cove Consol. I.S.D. v. Alanis*, 107 S.W.3d 558 (Tex. 2003); *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717 (Tex. 1995); *Carrollton–Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.*, 826 S.W.2d 489 (Tex. 1992); *Edgewood Indep. Sch. Dist. v. Kirby*, 804 S.W.2d 491 (Tex. 1991); *Edgewood Indep. Sch. Dist. v. Kirby*, 777 S.W.2d 391 (Tex. 1989).

[2] *See, e.g.*, *Neely*, 176 S.W.3d at 751.

parents to seek relief through an administrative process before they can file suit in court. Because we conclude that the parents must first exhaust their administrative remedies, we reverse the court of appeals' judgment and dismiss the case for lack of jurisdiction.

## I.
## Background

Sonia Herrera Marquez, Claudia Garcia, and Alicia Gomez (collectively, the parents) have children who attend schools within the Clint Independent School District. Relying on the district's own financial reports, the parents assert that the district allocates more money—as much as $3,512 more per student per year—to schools in the town of Clint than to comparable schools that their children attend in the communities of Montana Vista and Horizon City. According to the parents, their children's schools have more students who are "economically disadvantaged" or need bilingual education—two categories for which the State provides the district with additional funds. The parents believe more of those funds should go to their children's schools. Instead, the district allocates less to the schools that need more, and students at these "disfavored schools" do worse on standardized tests, drop out at higher rates, are less likely to graduate, and suffer other harms. The parents filed suit asking the court to enjoin the district from continuing its funding allocations, asserting in two causes of action that the district is violating the Texas Constitution's guaranties of "equal rights"[3] and a "general diffusion of knowledge."[4]

The district filed a plea to the jurisdiction, arguing that the trial court must dismiss the parents' claims because (1) the district enjoys governmental immunity, (2) the claims present a

---

[3] *See* TEX. CONST. art. I, § 3 ("All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services.").

[4] *See id.* art. VII, § 1 ("A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people, it shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools.").

2

"political question" that courts cannot address, and (3) the parents failed to exhaust their administrative remedies before filing suit. The parents admitted that they did not first seek administrative relief but asserted that the exhaustion-of-administrative-remedies requirement does not apply to their claims. The trial court dismissed the suit, concluding that the parents should have first sought administrative relief. The court of appeals reversed, reasoning that Texas law does not require the parents to exhaust administrative remedies because their claims are "solely [for] violations of their children's state constitutional rights." 445 S.W.3d 450, 456. The court of appeals remanded the case for the trial court to consider the district's immunity and political-question arguments. *Id.* We granted the district's petition for review.

## II.
## Exhaustion of Administrative Remedies

When the Legislature creates an administrative agency, it may grant the agency authority to resolve disputes that arise within the agency's regulatory arena. *See City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013). If the Legislature expressly or impliedly grants an agency sole authority to make an initial determination in such disputes, the agency has exclusive jurisdiction, and a party "must exhaust its administrative remedies before seeking recourse through judicial review." *Id.*; *see also Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002) (explaining that an agency impliedly obtains exclusive jurisdiction "when a pervasive regulatory scheme indicates that Congress intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed" (quoting Andrew G. Humphrey, *Antitrust Jurisdiction Remedies in an Electric Utility Price Squeeze*, 52 U. CHI. L. REV. 1090, 1107 n.73 (1985))). If the party files suit before exhausting exclusive administrative remedies, the courts lack jurisdiction and must dismiss the case. *Rhule*, 417 S.W.3d at 442; *see also Essenburg v. Dallas Cty.*, 988 S.W.2d 188, 189 (Tex. 1998) (per curiam) ("[A] plaintiff's

3

failure to exhaust administrative remedies may deprive courts of subject matter jurisdiction in the dispute.").

The requirement that parties exhaust administrative remedies does not deprive parties of their legal rights. *Rhule*, 417 S.W.3d at 442; *see* TEX. EDUC. CODE § 7.057(b) (stating that an administrative appeal to the Commissioner of Education "does not deprive any party of any legal remedy"). Instead, it honors the Legislature's intent that "the appropriate body adjudicates the dispute" first, *Essenburg*, 988 S.W.2d at 189, and thereby "ensure[s] an orderly procedure to enforce those rights." *Rhule*, 417 S.W.3d at 442. By requiring the agency to address the complaints first, the law permits the agency to apply its expertise and exercise its discretion to resolve the issue and to develop a complete factual record if the courts later get involved. *See McKart v. United States*, 395 U.S. 185, 194 (1969); *see also* Kenneth Culp Davis, *Administrative Law Doctrines of Exhaustion of Remedies, Ripeness for Review, and Primary Jurisdiction: 1*, 28 TEX. L. REV. 168, 169 (1949) ("Premature judicial intervention may defeat the basic legislative intent that full use should be made of the agency's specialized understanding within the particular field."). A party who obtains relief through the administrative process avoids the expense and delay of litigation. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006); *McKart*, 395 U.S. at 195. And if the outcome of the administrative process leaves the party dissatisfied, it may file suit and have the courts review the agency's decision. *Tex. Water Comm'n v. Dellana*, 849 S.W.2d 808, 810 (Tex. 1993); *see* RONALD L. BEAL, TEXAS ADMINISTRATIVE PRACTICE AND PROCEDURE, § 5.5.5, at 5-34 (2015) ("The purpose of the [primary-jurisdiction] doctrine is to assure that the agency will not be bypassed on what is specifically committed to it; the district court will remain open after the agency has acted."). In this appeal, we cannot grant or deny the parents the relief they are seeking; instead, we decide only whether the law requires them to first seek that relief through an administrative process

before they can seek redress from the courts.

## A.    Administrative Remedies for "School-Law" Complaints

The Texas Constitution requires the Legislature to "establish and make suitable provision for the support and maintenance of an efficient system of public free schools." TEX. CONST. art. VII, § 1. To fulfill this duty, the Legislature has established the Texas Education Agency (TEA), the office of the Commissioner of Education, the State Board of Education (SBOE), and local school districts throughout the state.[5] The TEA consists of the Commissioner and agency staff. TEX. EDUC. CODE § 7.002. The SBOE must fulfill its duties "with the advice and assistance of the commissioner." *Id.* § 7.102(b). School districts "have the primary responsibility for implementing the state's system of public education and ensuring student performance in accordance with [the Education Code]," *id.* § 11.002, while the Commissioner serves as "the educational leader of the state," *id.* § 7.055(b)(1).

Regarding disputes that arise within the education system, the Legislature has provided that, with limited statutory exceptions not at issue here,

> a person may appeal in writing to the commissioner if the person is aggrieved by:
> (1) the school laws of this state; or
> (2) actions or decisions of any school district board of trustees that violate:
>     (A)    the school laws of this state;  or
>     (B)    a provision of a written employment contract between the school district and a school district employee, if a violation causes or would cause monetary harm to the employee.

*Id.* § 7.057(a). However, "[a] person is not required to appeal to the commissioner before pursuing a remedy under a law outside of [the school laws] to which [the school laws] make[] reference or

---

[5] *See* TEX. EDUC. CODE §§ 7.002 (establishing the TEA); 7.055 (describing the Commissioner's powers and duties); 7.102 (describing the SBOE's powers and duties); 11.001–.171 (establishing school districts and describing the powers of districts and their boards of trustees). The Constitution expressly authorizes the Legislature to "provide for the formation of school districts by general laws," TEX. CONST. art. VII § 3(d), and expressly requires the Legislature to "provide by law for a State Board of Education," which "shall perform such duties as may be prescribed by law," *id.*, art. VII § 8.

with which [the school laws] require[] compliance." *Id.* § 7.057(a–1).

Although section 7.057(a) provides that a person "may" appeal to the Commissioner, we have interpreted the statute to *require* a person who *chooses* to appeal to first seek relief through the administrative process. *Grounds v. Tolar Indep. Sch. Dist.*, 707 S.W.2d 889, 892–93 (Tex. 1986). "The decision to appeal is optional, but the place of trial is jurisdictional." *Id.*; *see also Jones v. Clarksville Indep. Sch. Dist.* (*Clarksville ISD*), 46 S.W.3d 467, 470–71 (Tex. App.—Texarkana 2001, no pet.) ("[A]n aggrieved person may appeal, and *if* an appeal is taken, it *must* be to the commissioner if the matter is one within the scope of the agency's review powers."). For well over one hundred years, we have held that persons complaining about the "management of the school system" or the "administration of school laws" must exhaust their administrative remedies before courts can exercise jurisdiction.[6]

However, we have also been clear that this exhaustion requirement applies only to complaints that the Legislature has authorized the Commissioner to resolve. *See Warren*, 288 S.W. at 160 (explaining that the Commissioner's "exclusive prior jurisdiction pertains only to such matters as are by law placed under the supervision of the school authorities"). If the parents' claims against their school district are the type of claims that section 7.057(a) describes, then the parents must first exhaust their administrative remedies unless section 7.057(a–1) or another exception to the exhaustion requirement applies.

---

[6] *See, e.g.*, *Nance v. Johnson*, 19 S.W. 559, 559 (Tex. 1892) (holding that "the authority of the courts to interfere with the management of the school system, at the instance of citizens or school officials, does not ordinarily exist," and "until [the plaintiffs] had exhausted [their administrative remedies], they were not entitled to an injunction"); *see also Warren v. Sanger Indep. Sch. Dist.*, 288 S.W.159, 160 (Tex. 1926) ("It has been uniformly held that the resort to the school authorities must first be made before the courts will be authorized to hear any complaint as to a matter properly belonging to the administration of the school laws. It is a condition precedent to the exercise of the jurisdiction of the civil courts.").

6

**B.    The Parents' Claims**

In granting the plea to the jurisdiction, the trial court implicitly found that the parents' claims fall under the Commissioner's jurisdiction because they allege that the district's board of trustees' budgeting decisions violate the "school laws of this state." TEX. EDUC. CODE § 7.057(a)(2)(A). "School laws of this state" means all of the provisions of titles 1 and 2 of the Education Code and the administrative rules adopted under those titles. *Id.* § 7.057(f)(2). Title 2 includes chapters 41 through 46, which govern the state's funding of public schools, *see id.* §§ 41.001–46.061, and these sections are indisputably "school laws of this state," *see id.* § 7.057(f)(2). The trial court, therefore, dismissed the case and required the parents to appeal first to the Commissioner for relief.

The court of appeals, however, concluded that the parents complain "solely of violations of their children's state constitutional rights," not of violations of any statutes or rules. 445 S.W.3d at 456. Because constitutional provisions exist outside of the Education Code and are not "school laws of this state," the court held that section 7.057(a) does not authorize the Commissioner to hear the parents' complaints. *Id.* And because section 7.057(a) does not require the parents to appeal the district's decisions to the Commissioner, the court found it unnecessary to consider whether any exceptions to the exhaustion requirement apply. *Id.*

In support of the court of appeals' decision, the parents note that their petition expressly asserts only two "causes of action"—one for "Violations of Texas Constitution Article VII, Section 1" (alleging that the district fails to provide an "adequate," "efficient," or "suitable" system for the "general diffusion of knowledge"), *see supra*, n.4, and one for "Violations of Texas Constitution Article I, Section 3" (alleging that the district has no rational basis for failing to treat its students equally through its funding allocations), *see supra*, n.3. The parents contend that these

7

constitutional provisions are not "school laws of the state," so section 7.057(a) neither empowers the Commissioner to resolve their complaints nor requires the parents to exhaust administrative remedies.

We agree that the constitutional provisions are not "school laws of the state." We do not agree, however, that the way the parents pleaded their causes of action controls the outcome in this case. The nature of the claims, rather than the nomenclature, controls, and artful pleadings cannot circumvent statutory jurisdictional prerequisites. *Cf. Blue Cross Blue Shield of Tex. v. Duenez*, 201 S.W.3d 674, 676 (Tex. 2006) ("A party cannot circumvent an agency's exclusive jurisdiction by filing a declaratory-judgment action if the subject matter of the action is one 'over which the Legislature intended the [administrative agency] to exercise exclusive jurisdiction.'" (alteration in original) (quoting *Thomas v. Long*, 207 S.W.3d 334, 342 (Tex. 2006))). To resolve jurisdictional questions, we construe the pleadings liberally in the plaintiffs' favor, looking for the pleaders' intent and reading the pleadings "as a whole." *City of Houston v. Williams*, 353 S.W.3d 128, 141 (Tex. 2011).

The parents' petition does identify only two "causes of action," both alleging only constitutional violations. But the petition as a whole reflects the true nature of the parents' complaint: that the district defies the Constitution's mandates *by violating the requirements of the Education Code*. Citing section § 4.001(a), the parents plead that "the 'mission' of the Texas Education Code is a public education system that 'ensur[es] that all Texas children have access to'" the kind of education the Constitution requires. Citing section 1.002(a), they assert that the Legislature "re-affirms" the Constitution's "emphasis on access and opportunity" through the Education Code by requiring all educational institutions to "provide equal opportunities to all individuals within its jurisdiction or geographical boundaries pursuant to this code." They explain,

8

"It is through the local school districts that the will of the Texas legislature under Article VII, Section 1 is effectuated," and the Legislature has created statutory funding formulas to implement the constitutional requirements through its distribution of funds to the districts. Citing "sections 42.001 et seq.," and specifically sections 42.152 (addressing economically disadvantaged students) and 42.153 (addressing bilingual students), they plead that the Code outlines "several factors to consider in equalizing the distribution of funds to various districts, based on the population of higher-need students in each district," including bilingual and economically disadvantaged students.

And more importantly, the parents allege that the district contravenes the Constitution by violating the statutory provisions through which the Legislature has sought to fulfill the constitutional requirements. They assert, for example, that "sections 42.001 et seq." create funding disparities in favor of schools with more bilingual and economically disadvantaged students, but the district "reversed" that disparity by giving Clint schools a "disproportionate share of the expenditures." They allege that the district's "intra-district funding does not meet constitutional *or statutory* standards," and that the district has thus "thwarted *the Legislature's implementation of its* constitutional mandate . . . and *thus* violated [the students' constitutional rights]." (Emphases added.)  For relief, they pray for a judgment:

- declaring that the district "has failed and refused . . . to provide Plaintiffs' children . . . with equal education funding for all students at comparable grade levels, appropriately weighted *according to the state funding formula*, and *thereby* has denied . . . those children their right[s] . . . under the Texas Constitution" (emphases added); and

- enjoining the district from failing and refusing to provide equal funding "appropriately weighted *according to the state funding formula*" (emphasis added).

The parents argue that their petition's references to the Education Code "are mere background, not causes of action," and are intended only to "highlight the magnitude of the funding

9

disparity at issue." They emphasize that they "have never sought to prosecute claims under the [Education Code]." In fact, they contend, the Code only governs how funds are distributed *between districts*, and does not "require school districts to fund individual schools according to a formula or other measurable standard." As a result, they argue, the Education Code contains no provisions "upon which Parents could bring this particular suit," and therefore, the Constitution is the only possible vehicle for their claims.

Despite these arguments, the parents' petition can only be read to assert that the district is violating the Constitution by disregarding (or failing to "meet") "statutory standards," thereby "thwarting" the Legislature's efforts to fulfill its constitutional duties. The parents could not assert their claims in any other way. The Constitution provides that it is the "duty of the Legislature" to "make suitable provision for the support and maintenance of an efficient system of public free schools." TEX. CONST. art. VII, § 1. The Legislature created school districts to fulfill this duty, and as we have previously noted, it is the Legislature—not the Constitution—that imposes legal obligations on districts. *Alanis*, 107 S.W.3d at 584.

While we need not and do not hold that a school district or its board could never violate a constitutional provision, it is difficult to imagine any such violation, at least in the school-finance context, that would not result from a violation of the "school laws" that create and regulate the district. Here, at least, the parents' claims that the district is violating constitutional provisions *necessarily* allege constitutional violations resulting from violations of the "school laws of the state." In addition to the Code sections that the parents' petition references, their claims implicate many other laws that require districts to do their part to help the Legislature fulfill the constitutional requirements. For example, the Education Code:

-   imposes on districts "the primary responsibility for . . . ensuring student performance in accordance with this code," TEX. EDUC. CODE § 11.002;

10

- requires district boards to establish academic and fiscal performance goals and ensure that the superintendent is accountable for meeting those goals, *id.* § 11.1511(b);

- requires the Commissioner to determine each district's accreditation status in light of its academic achievement and financial accountability ratings, and permits the Commissioner to consider "the effectiveness of the district's programs for special populations," *id.* § 39.052;

- requires each district to satisfy the accreditation criteria, academic performance standards, and financial accountability standards, *id.* § 39.102;

- authorizes the Commissioner to take actions against a district that fails to perform and maintain its accredited status, including the appointment of a board of managers that could amend the district's budget, *id.* § 39.112(b);

- requires the Commissioner to establish advisory guidelines relating to the fiscal management of a school district, *id.* § 44.001;

- requires each district superintendent to prepare a proposed budget "covering all estimated revenue and proposed expenditures of the district," which "must be prepared according to . . . rules adopted by the State Board of Education," *id.* § 44.002; and

- requires the TEA to review and analyze each district's budget, fiscal reports, and audit reports "to determine whether all legal requirements have been met and to collect fiscal data needed in preparing school fiscal reports for the governor and the legislature," *id.* § 44.010.

Further, the "school laws of the state" include numerous rules that the TEA has adopted to regulate individual districts' financial practices and their effects on individual schools and individual students, including higher-need students. For example, the TEA rules:

- require the Commissioner to take specific actions if "a campus' performance is below any standard," 19 TEX. ADMIN. CODE § 97.1061;

- require the Commissioner to "assign a campus intervention team" if "the performance of a campus is below any [student-achievement] standard" for the current school year, *id.* § 97.1063;

- provide for a financial accountability system that addresses "local management and decision-making processes that impact the allocation of financial resources in Texas public schools," *id.* § 109.1001; and

11

- require "each school district" to take specific steps to ensure that "every student in the state who has a home language other than English and who is identified as an English language learner [is] provided a full opportunity to participate in a bilingual education or English as a second language (ESL) program," *id.* § 89.1201.

As these examples demonstrate, if (as the parents allege) the district allocates funds among its schools in a manner that unequally and irrationally favors some schools and students to the unlawful detriment of others with higher educational needs, the district necessarily violates the "school laws of the state." The parents do not allege that any of these laws violate the Texas Constitution; they allege that the district violates the Constitution by failing to comply with the laws. Those same laws grant the Commissioner both the authority and the obligation to remedy the situation.

Under these circumstances, we conclude that the parents actually and necessarily claim to be "aggrieved by . . . actions or decisions of [a] school district board of trustees that violate . . . the school laws of this state." TEX. EDUC. CODE § 7.057(a)(2)(A). As a result, we conclude that the statute requires the parents to appeal to the Commissioner—as "the educational leader of the state," *id.* § 7.055(b)(1)—for relief. And absent an exception to that requirement, the courts lack jurisdiction to address the parents' claims until the parents exhaust their administrative remedies.

## C. Exceptions

Even if section 7.057's exhaustion requirement applies, the parents argue, several exceptions negate that requirement in this case. The parents contend that their claims are exempt from the exhaustion requirement because (1) their claims are constitutional, and constitutional claims are exempt; (2) their claims are exempt under section 7.057(a–1); (3) they sought temporary injunctive relief, which the Commissioner of Education does not have the power to grant; and (4) their claims are exempt because they present pure questions of law. We do not agree that any of

12

these exceptions apply to the parents' claims in this case.

### 1. Constitutional Claims

Although the court of appeals concluded that section 7.057's exhaustion requirement does not apply to the parents' claims, it also stated that an exception to the requirement applies if "the claims are for a violation of a state or federal constitutional right." 445 S.W.3d at 454. The parents likewise contend that, even if their claims necessarily involve alleged violations of the school laws, thus granting the Commissioner authority to hear their appeal, the Commissioner's jurisdiction is not exclusive and their claims are excepted from the exhaustion-of-remedies requirement because they allege violations of the Texas Constitution. We do not agree.

In support of its conclusion that claims "for a violation of a state or federal constitutional right" are excepted from the exhaustion requirement, the court of appeals cited a string of opinions from other Texas courts of appeals.[7] Most of these courts of appeals' opinions ultimately trace back to a footnote in our opinion in *Texas Education Agency v. Cypress–Fairbanks Independent School District*, 830 S.W.2d 88 (Tex. 1992).[8]

In *Cypress–Fairbanks*, four districts jointly filed a suit challenging the Commissioner's authority to hear appeals in which district employees alleged federal due process violations and sought back-pay, attorney's fees, or other relief for deprivation of federal constitutional rights

---

[7] *See* 445 S.W.3d at 454 (citing *Dotson v. Grand Prairie Indep. Sch. Dist.*, 161 S.W.3d 289, 291–93 (Tex. App.—Dallas 2005, no pet.) (citing *Gutierrez v. Laredo Indep. Sch. Dist.*, 139 S.W.3d 363, 366 (Tex. App.—San Antonio 2004, no pet.))); *Harlandale Indep. Sch. Dist. v. Rodriguez*, 121 S.W.3d 88, 91–92 (Tex. App.—San Antonio 2003, no pet.); *Clarksville ISD*, 46 S.W.3d at 471 n.3; *Jones v. Dall. Indep. Sch. Dist.* (*Dallas ISD*), 872 S.W.2d 294, 296 (Tex. App.—Dallas 1994, writ denied); and *Mitchison v. Hous. Indep. Sch. Dist.*, 803 S.W.2d 769, 773–74 (Tex. App.—Houston [14th Dist.] 1991, writ denied)).

[8] *Gutierrez*, *Rodriguez*, and *Dallas ISD* directly rely on our opinion in *Cypress–Fairbanks*. *Clarksville ISD* relies on *Gibson v. Waco Independent School District* (*Gibson I*), 971 S.W.2d 199 (Tex. App.—Waco 1998), *vacated on other grounds*, 22 S.W.3d 849 (Tex. 2000), which in turn relied on our opinion in *Cypress–Fairbanks*, though for a narrower proposition than other courts of appeals have frequently attributed to *Gibson*, as discussed below. *Mitchison* does not relate to the asserted exception for constitutional claims.

under 42 U.S.C. §§ 1981 & 1988. *Id.* at 89. The question we addressed was whether the predecessor to section 7.057(a) authorized the Commissioner to hear and resolve those federal claims in an administrative appeal. Like the current section 7.057(a), the predecessor statute authorized the Commissioner to hear appeals of "any person aggrieved by . . . actions or decisions of any board of trustees," *id.* at 91 (quoting predecessor to TEX. EDUC. CODE § 7.057(a)), but unlike the current statute, it did not limit that authority to appeals from board decisions "*that violate: (A) the school laws of this state; or (B) a provision of a written employment contract . . . .*" TEX. EDUC. CODE § 7.057(a). We concluded that the employees were "certainly" persons who claimed to be "aggrieved by . . . actions or decisions of a[] board of trustees," and since the statute did not limit the type of such decisions as it currently does, we concluded that the statute authorized the Commissioner to decide whether the districts' decisions violated federal law, even though the Commissioner could not "grant all relief—including damages and injunctive relief—to which the employees would otherwise be entitled if they prevailed on their claims in court." *Cypress–Fairbanks*, 830 S.W.2d at 91.

But the fact that the employees *could* pursue the constitutional claims with the Commissioner did not necessarily mean the exhaustion-of-remedies doctrine *required* them to do so. As to that issue, we relied on two United States Supreme Court decisions and concluded "that the employees' Title 42 and constitutional claims are not affected by the doctrine of exhaustion of administrative remedies such that they must be originally considered by the TEA." *Id.* at 91, n.3 (citing *Damico v. California*, 389 U.S. 416, 417 (1967); *McNeese v. Bd. of Educ. for Cmty. Unit School Dist. 187*, 373 U.S. 668, 670–71 (1963)). In these two cases, the Supreme Court held that a state-law exhaustion-of-remedies requirement does not apply to deprive *federal courts* of jurisdiction over a *federal claim* for constitutional violations under 42 U.S.C § 1983. *Damico*, 389

14

U.S. at 417; *McNeese*, 373 U.S. at 671.

The Supreme Court explained in *McNeese* that the purpose of federal laws like section 1983 is "to override certain kinds of state laws, to provide a remedy where state law was inadequate, . . . and to provide a remedy in the federal courts supplementary to any remedy any State might have." 373 U.S. at 672. In light of this, the Court concluded that allowing a state exhaustion requirement to prevent a *federal-law claim* in *federal* court would "defeat those purposes." *Id.* Citing *McNeese* and *Damico*, we held in the *Cypress–Fairbanks* footnote that, "[b]ecause of the nature of" the employees' federal statutory and constitutional claims, "prior resort to the administrative process is not usually required." 830 S.W.2d at 91 n.3.

Texas courts of appeals of have since reached different understandings of the *Cypress–Fairbanks* footnote. Some have construed it narrowly to hold that this exception to the exhaustion requirement applies only to federal claims (whether statutory or constitutional) asserted in federal courts, and even then only when the claims "do not involve issues of state law which control the disposition of the case." *See Hicks v. Lamar Consol. Indep. Sch. Dist.*, 943 S.W.2d 540, 542 (Tex. App.—Eastland 1997, no writ) (rejecting other courts of appeals' decisions that "categorically create an exception to the general rule when constitutional questions are raised, regardless of whether those constitutional claims are federal or state claims"). Others have held that the exception applies only to federal claims (whether statutory or constitutional), but only if they involve solely questions of law. *See Janik v. Lamar Consol. Indep. Sch. Dist.*, 961 S.W.2d 322, 323–24 (Tex. App.—Houston [1st Dist.] 1997, pet. denied) ("[F]ederal constitutional claims involving only questions of law, not questions of fact, bypass the requirement of exhaustion of administrative remedies not because the claims are constitutional, but because they are federal."). Yet others have said that the exception applies only when the party asserts "a federal constitutional

claim or a claim under Title 42 of the United States Code." *Gibson,* 971 S.W.2d at 202; *see also*

*Jackson v. Hous. Indep. Sch. Dist.*, 994 S.W.2d 396, 402 (Tex. App.—Houston [14th Dist.] 1999,

no pet.) (holding claim "arising under the due process clause of the Texas Constitution" is "not

exempt from the exhaustion requirement").

Other courts of appeals, however, have held more broadly that all constitutional claims

(whether federal or state) are exempt from the exhaustion requirement, unless they are "ancillary

to and supportive of" a claim that section 7.057(a) authorizes the Commissioner to resolve. *See*

*Clarksville ISD*, 46 S.W.3d at 474–75. These cases, however, do not technically recognize a

constitutional-claims *exception* to the exhaustion requirement, as the Supreme Court did in

*McNeese*, but instead conclude that section 7.057(a) simply does not apply to claims alleging

constitutional violations at all. In *Clarksville ISD* for example, the Texarkana court reasoned that

section 7.057(a) does not require exhaustion of state or federal constitutional claims because it

does not provide an administrative appeal for such constitutional challenges to the actions or

decisions of a school board "because those are not part of the school laws of the state." *Id.* at 474.

These courts reasoned, however, that if the plaintiff complains of a school board decision

that violates the school laws or an employment contract *as well as* a constitutional provision, then

section 7.057(a) authorizes the Commissioner to hear the complaint and the exhaustion

requirement applies. In other words, "[i]f the constitutional claims are ancillary to and supportive

of a complaint about the board's handling of an employment contract or application of school law,

then the entire action should be amenable to administrative appeal." *Id.* (reasoning that "[i]f courts

allow the avoidance of the [administrative] procedure by the simple allegation of constitutional

misdeeds, it would likely corrupt the entire process"); *see also El Paso Indep. Sch. Dist. v.*

*McIntyre*, 457 S.W.3d 475, 488–89 (Tex. App.—El Paso 2014, pet. granted) (quoting *Dotson*, 161

16

S.W.3d at 292 (quoting *Clarksville ISD*, 46 S.W.3d at 474)).

Although we need not articulate all of the parameters of the so-called constitutional-claims exception to the exhaustion-of-remedies requirement in this case, we draw two principles from these cases relevant to school-law claims and with which we agree.[9] First, when a person complains that a school board's conduct or decision violates *only* the person's state or federal constitutional rights, and the conduct or decision does not violate the school laws of the state or an employment contract, section 7.057(a) neither authorizes nor requires the Commissioner to hear the appeal. *See* TEX. EDUC. CODE § 7.057(a). Under those circumstances, no "exception" to an exhaustion requirement is needed. But if the constitutional claim is "ancillary to and supportive of a complaint about the board's handling of an employment contract or application of school law," such that the true nature of the claim, although asserted as a constitutional violation, necessarily results from a violation of school laws or an employment contract, then section 7.057(a) authorizes and requires the Commissioner to hear the appeal first, unless another exception to the exhaustion requirement applies. *Clarksville ISD*, 46 S.W.3d at 474. In an appropriate case, the exception for federal claims asserted in federal court, which the Supreme Court recognized in *McNeese* and we acknowledged in *Cypress–Fairbanks*, represents one such exception. *See Cypress–Fairbanks*, 830

---

[9] We need not and do not address the constitutional-claims exception to exhaustion requirements in statutes other than section 7.057(a) of the Education Code. This Court has never globally exempted claims based on the Texas constitution from statutory exhaustion-of-administrative-remedies requirements, and we decline to do so today. To the contrary, we have, at least on some occasions, required exhaustion of administrative remedies before asserting claims under the Texas constitution. *See City of Dallas v. Stewart*, 361 S.W.3d 562, 579 (Tex. 2012) ("Although agencies have no power to preempt a court's constitutional construction, a party asserting a [constitutional takings claim] must first exhaust its administrative remedies and comply with jurisdictional prerequisites for suit. . . . [A] litigant must avail itself of statutory remedies that may moot its takings claim, rather than directly institute a separate proceeding asserting such a claim.") (footnote omitted); *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006) (holding that taxpayers were required to exhaust their administrative remedies before bringing suit on constitutional claims because they sought not only a declaration on the legal issue of whether the constitution prohibited taxation of trailers, but also to set aside their individual assessments); *Dellana*, 849 S.W.2d at 810 (holding that constitutional and statutory challenges to administrative action could not be brought before exhaustion of administrative remedies where claims fell within the scope of agency's review).

S.W.2d at 91 n.3 (citing *McNeese*, 372 U.S. at 670–71).

We have already concluded that the parents' constitutional claims necessarily result from the school board's alleged violations of the school laws of the state. Section 7.057(a) therefore applies and requires the parents to exhaust their administrative remedies unless another exception applies. Because the parents do not assert federal claims in federal court, the *McNeese* exception does not apply. So we must consider the other exceptions on which the parents rely.

### 2. Section 7.057(a–1)

Section 7.057(a–1), which the parents contend applies here, provides: "A person is not required to appeal to the commissioner before pursuing a remedy under a law outside of Title 1 or [Title 2] or to which Title 1 or [Title 2] makes reference or with which Title 1 or [Title 2] requires compliance." TEX. EDUC. CODE § 7.057(a–1). Relying on section 7.057(a–1), the parents contend that their claims are constitutional and thus "outside" of titles 1 and 2 and that this is true even if title 2 "requires compliance" with the Texas Constitution. *See id.* This argument fails for the same reason as the parents' initial argument that the exhaustion-of-remedies statute does not cover their claims: while the parents allege that the school district has violated their children's constitutional rights, they necessarily assert that the district did this by failing to comply with title 2 of the Education Code. Thus, they are not pursuing claims "outside" of title 2; they are pursuing claims that they are "aggrieved by . . . actions or decisions of any school district board of trustees that violate . . . the school laws of this state"—claims to which the exhaustion-of-remedies requirement directly applies. *Id.* § 7.057(a)(2)(A).

The Legislature enacted subpart (a–1) in response to a court of appeals' decision that required claimants to exhaust administrative remedies under the Education Code when bringing a claim against school officials for failure to comply with the Texas Open Meetings Act. *See* House Comm. on Pub. Edu., Bill Analysis, Tex. H.B. 829, 81st Leg., R.S. (2009) ("A recent court ruling

18

interpreted the Education Code in a way that would require an individual who has a cause of action arising from the open meetings laws to exhaust administrative remedies by taking his or her complaint to the commissioner prior to filing a challenge in court. [House Bill] 829 specifies that an individual with a complaint arising from a law that is referenced but not codified in Titles 1 and 2 of the Education Code is not required to first present the claim to the commissioner before pursuing a judicial remedy . . . ."); *see also Harrison v. Neeley*, 229 S.W.3d 745, 746 (Tex. App.—San Antonio 2007, pet. denied) (holding that because title 2 requires school districts to comply with the Open Meetings Act, the Open Meetings Act was "incorporated . . . into the definition of a school law of the state" such that the Education Code's exhaustion-of-remedies requirement applied to claims under the act).[10]

The parents are not pursuing a claim that the school board's actions and decisions violate the school laws of this state indirectly by violating some independent legal mandate incorporated into title 1 or 2 by reference, such as the Open Meetings Act. Under the Open Meetings Act, a school district is a "governmental body," TEX. GOV'T CODE § 551.001(3)(E), and "[e]very regular, special, or called meeting of a governmental body shall be open to the public, except as provided by this chapter," *id.* § 551.002. The Open Meetings Act thus imposes a duty directly on school districts, and it creates specific, independent enforcement mechanisms and remedies for violations of its mandates. *See id.* § 551.141–.146. A claim for a violation of the Open Meetings Act and remedies for such a violation thus exist "outside" of the school laws of this state, even though the school laws "reference" the act and "require[] compliance" with it. *See* TEX. EDUC. CODE

---

[10] We note that while this legislative history of section 7.057(a–1) provides useful context and a ready example of the kind of law to which the provision applies, we need not and do not rely on legislative history to construe the statute. The provision's meaning is plain on its face, and we construe it accordingly here.

§ 7.057(a–1). The same cannot be said of the parents' constitutional claims against the school district.

As we have explained, the school district's obligation to provide a constitutionally adequate education derives not directly from the Constitution but from the Legislature's decision to "rely heavily on school districts to discharge its [constitutional] duty." *Neeley*, 176 S.W.3d at 770.[11] Specifically, the Legislature has enacted in title 2 an extensive system of standards, sanctions, and rewards designed to compel districts to provide a constitutionally adequate public education. *See Alanis*, 107 S.W.3d at 580 ("Chapter 39 of the Education Code, entitled 'Public School System Accountability', sets school accreditation standards, rewards achievement of these standards, and imposes sanctions for non-compliance ranging from admonitions to closure of the district. These provisions are legislated requirements that school districts provide an adequate education, and they leave no meaningful discretion for districts to do otherwise." (citations omitted)). In short, the school district has a duty to provide students a constitutionally adequate public education not because the Constitution compels it to do so but because the "school laws of this state" compel it to do so. *See* TEX. EDUC. CODE § 7.057(f)(2) (defining "school laws of this state" to include title 2). We therefore hold that section 7.057(a–1) does not exempt the parents' claims from the exhaustion-of-remedies requirement in section 7.057 of the Education Code.

### 3. Irreparable Harm and Inadequate Relief

The parents' petition includes a request for temporary injunctive relief, and they rely on *Houston Federation of Teachers, Local 2415 v. Houston Independent School District*, 730 S.W.2d

---

[11] *See also Alanis*, 107 S.W.3d at 579–80 ("The Legislature's duty under article VII, section 1 is to make suitable provision for a general diffusion of knowledge through free public schools. 'As long as the Legislature establishes a suitable regime that provides for a general diffusion of knowledge, the Legislature may decide whether the regime should be administered by a state agency, by the districts themselves, or by any other means.'" (quoting *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 730 n.8 (Tex. 1995))).

644, 646 (Tex. 1987), to argue that they can bring their claim for temporary injunction without exhausting administrative remedies. In *Houston Federation of Teachers*, we held that a party need not exhaust administrative remedies before seeking a temporary injunction if (1) the administrative agency lacks the power to issue immediate injunctive relief and (2) the party will suffer irreparable harm during the pendency of the administrative process if not afforded immediate injunctive relief. *Id.* In that case, a group of teachers sought a temporary injunction to prevent a school district from implementing a tutorial program that would have extended the school day for high schools by up to thirty minutes, which the teachers alleged would violate their employment contracts with the district. *Id.* at 645.

After a temporary injunction hearing, the trial court determined that the teachers would suffer "immediate and irreparable harm" if the program was implemented and issued a temporary injunction. *Id.* at 645–46. The court of appeals dissolved the temporary injunction and dismissed the suit, holding that the teachers were required to exhaust their administrative remedies before seeking a temporary injunction in the courts. *Id.* at 645. We disagreed, holding that "[p]arties are not required to pursue the administrative process regardless of the price." *Id.* at 646. We held that the trial court had jurisdiction to issue temporary injunctive relief before the teachers exhausted their administrative remedies because the "Commissioner of Education is not authorized to order immediate injunctive relief" and the trial court's finding that the teachers would suffer irreparable harm in the absence of a temporary injunction was "undisturbed" on appeal. *Id.* The order at issue in *Houston Federation of Teachers* was the trial court's temporary injunction, and we decided only the trial court's jurisdiction to issue that injunctive relief. We did not decide whether the trial court had jurisdiction over the teachers' other claims for permanent injunctive relief. *See generally id.*

21

Temporary injunctive relief, however, is not appropriate here. "A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). The "status quo" is the "last, actual, peaceable, non-contested status which preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (quoting *Janus Films, Inc. v. City of Fort Worth*, 358 S.W.2d 589, 589 (Tex. 1962)). Here, the parents seek not to preserve the status quo, but to force the district to change the way it distributes education funds. Specifically, the parents ask the trial court to "enjoin [the district] from failing and refusing to provide Plaintiffs' children and those similarly situated with equal education funding for all students at comparable grade levels, appropriately weighted according to the state funding formula."

The parents allege that the district has been distributing funds in an inappropriate manner for years, but contend that the existing distribution scheme cannot be the "status quo" because it is "illegal." While it is true that "the status quo cannot be a violation of the law," when the determination of whether the status quo is a violation of the law "is the central question of the suit," that question "should be determined with a full trial on the merits" and injunctive relief can be used only to preserve "the last peaceable uncontested status between the[] parties." *Newton*, 146 S.W.3d at 651–52 (citing *City of Arlington v. City of Fort Worth*, 873 S.W.2d 765, 767–69 (Tex. App.—Fort Worth 1994, writ dism'd w.o.j.)). In *Newton*, Democratic Party candidates sued a political action committee, alleging that the PAC had been soliciting, accepting, and expending funds from other, unconnected corporations in violation of the Election Code for four years. *Id.* at 649. The candidates sought a declaratory judgment and temporary and permanent injunctive relief. *Id.* After the trial court granted a temporary restraining order[12] prohibiting the PAC from

---

[12] *Newton* involved a temporary restraining order rather than a temporary injunction. 146 S.W.3d at 650. Temporary restraining orders differ from temporary injunctions in several ways, but they are the same with respect to

continuing to solicit, accept, or spend the challenged corporate funds, we directed the trial court to vacate the order. *Id.* at 653. We noted that "the plaintiffs' allegations raise important and difficult issues that have not been resolved by trial on the merits" and that "[t]he plaintiffs assert that violations have been ongoing for years, but nothing in their pleadings suggests a legitimate reason for the plaintiffs to have delayed raising these issues until the day early voting started." *Id.* at 652. We concluded that, "[u]nder these circumstances, the status quo to be preserved is that of [the PAC's] publicly reported and until now unchallenged activities over the past four years." *Id.* at 652.

The *Newton* Court discussed two other cases that are helpful here: *Janus Films* and *City of Arlington*. In *Janus Films*, a movie company challenged a city ordinance and the city's denial of a permit to exhibit a film on the basis of obscenity. 358 S.W.2d 589; *see also Janus Films, Inc. v. City of Fort Worth* (*Janus Films I*), 354 S.W.2d 597, 598 (Tex. Civ. App.—Fort Worth 1962, writ ref'd n.r.e.) (court of appeals opinion). The company argued that the ordinance and denial of the permit violated its free speech rights. *Janus Films I*, 354 S.W.2d at 600. This Court held that the trial court properly denied injunctive relief because the requested injunction, which would have precluded the city from interfering with the company's showing of the film, would not preserve the status quo, which was a status in which the company lacked a permit and could not show the film:

> [W]e defined "status quo" as being "the last, actual, peaceable, non-contested status which preceded the pending controversy[."] Applying that definition to the case at bar would result in the status quo to be properly preserved being that time at which

---

this purpose: preservation of the status quo. *See id.* at 651 n.12 (citing *Cannan v. Green Oaks Apts., Ltd.*, 758 S.W.2d 753, 755 (Tex. 1988) (per curiam), for the proposition that "[t]he issuance of a temporary restraining order, like the issuance of a temporary injunction, is to maintain the status quo between the parties"); *Cannan*, 758 S.W.2d at 755 (citing *Tex. Aeronautics Comm'n v. Betts*, 469 S.W.2d 394, 398 (Tex. 1971); *Janus Films*, 358 S.W.2d at 589; *Transp. Co. of Tex. v. Robertson Transps., Inc.*, 261 S.W.2d 549, 552 (Tex. 1953)). And the *Newton* Court relied on opinions addressing this issue in the temporary-injunction context.

petitioner had no permit to display his film . . . . By his petition, petitioner sought to have the board enjoined from interfering with the display of the film in question thus affording him the opportunity to display the film as if he had an unconditional permit.

*Janus Films*, 358 S.W.2d at 589–90.

In *City of Arlington*, the trial court awarded the City of Fort Worth a temporary injunction that prohibited the City of Arlington from placing water treatment plant sludge into the Fort Worth sewer system. 873 S.W.2d at 768. On interlocutory appeal, the court of appeals dissolved the injunction. *Id.* at 770. The court observed that Arlington had been discharging sludge into Fort Worth's sewer system for years under the cities' contractual arrangements, and thus, continued discharging was "the last uncontested status quo" between the cities. *Id.* at 768. Fort Worth argued that Arlington's discharging practice was now illegal because of the termination of the contractual arrangement that allowed for such discharge. *Id.* The court rejected this argument because the determination of whether Arlington's discharging was authorized or unauthorized under the contracts was "the central question of the suit, and should be determined with a full trial on the merits." *Id.* at 769.

Here, as in *Newton*, *Janus Films*, and *City of Arlington*, the parents' contention that the district's current distribution methodology, which they concede has been in place for years, is illegal "is the central question of the suit," and the parents cannot obtain a temporary injunction forcing the district to change its distribution methodology before a trial on the merits. *See Newton*, 146 S.W.3d at 652; *City of Arlington*, 873 S.W.2d at 769. The parents thus cannot rely on the exception we recognized in *Houston Federation of Teachers* to avoid their statutory duty to exhaust administrative remedies before seeking judicial redress. *Cf. Hous. Fed'n of Teachers*, 730 S.W.2d at 646; *see Foree v. Crown Cent. Petroleum Corp.*, 431 S.W.2d 312, 316 (Tex. 1968) ("Because the purpose of the doctrine is to assure that the agency will not be bypassed on what is

especially committed to it, and because resort to the courts is still open after the agency has acted, the doctrine applies even if the agency has no jurisdiction to grant the relief sought." (quoting KENNETH CULP DAVIS, ADMINISTRATIVE LAW TEXT § 19.07 at 352 (1950))).

### 4. Pure Questions of Law

Finally, the parents assert that they are exempt from the exhaustion requirement because their claims present "pure questions of law." According to the parents, "an allegation that 'a particular action' taken by a school board violates a statute is generally a question of law," and what they challenge here is "'a particular action' solely taken by [the district]: its funding scheme." They also assert that all of the factual allegations in their pleadings are merely background and are either undisputed or public record. The district, by contrast, asserts that this case "necessarily implicates a wide array of complicated financial matters including teacher and staff salaries, maintenance costs, utility costs, particular special education needs for each campus[,] and [a] variety of other factual matters that are necessarily a part of any determination of whether the District's funding decisions were in compliance with the school laws of the state." We agree with the district.

"Generally, the doctrine of exhaustion of administrative remedies does not apply when there are purely questions of law involved." *Grounds*, 707 S.W.2d at 892 (holding that the determination of teachers' and school districts' rights under contracts was "not a pure question of law" and requiring exhaustion of administrative remedies).[13] But the parents' claims here do not

_____

[13] We note that this exception for claims that present a "pure question of law" may apply when the claim asserts a constitutional violation. *See Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502 (Tex. 2006) (noting that a claim that a tax on camper trailers was unconstitutional "need not be brought administratively," but the claimants must exhaust their administrative remedies for a claim that the trailers are "nontaxable" and "seeking to have their individual assessments set aside"); *see also Hicks*, 943 S.W.2d at 542 ("A purely constitutional claim is a question of law."). In such a case, however, the exception applies not because the claimant asserts a constitutional claim, but because the claim presents only a pure question of law. If the claim involves factual issues or mixed questions of law and fact, the "pure question of law" exception does not apply, even though the claimant presents a constitutional claim. *See Hicks*, 943 S.W.2d at 542 ("[W]here purely constitutional questions (questions of law) are mixed with questions

present pure questions of law; they present questions of historical fact (such as what has happened up until now in the district and its individual schools with respect to funding and student performance), questions of law (such as what the students' constitutional rights are with respect to public education funding), and mixed questions of law and fact (such as whether the students' constitutional rights have been violated by the district's distribution of educational funding). *See, e.g.*, *Stewart*, 361 S.W.3d at 578 (explaining the concepts of "historical facts," "constitutional facts," and "mixed questions of law and fact"). As we noted long ago:

> It is a well-established rule that in all matters pertaining to the administration of school laws involving questions of fact as distinguished from pure questions of law resort must first be had to the school authorities and the method of appeal there provided for exhausted before the courts will entertain jurisdiction of a complaint with reference to such matters.

*Mission Indep. Sch. Dist. v. Diserens*, 188 S.W.2d 568, 570 (Tex. 1945) (quoting *State v. Sanderson*, 88 S.W.2d 1069, 1070 (Tex. Civ. App.—Waco 1935, no writ)). This rule governs here.

We also reject the parents' contention that the district has waived its argument that constitutional claims are subject to administrative exhaustion if they involve fact issues. The issue in this appeal is the same issue that the district raised in the trial court: whether Texas law requires the parents to exhaust their administrative remedies before bringing the claims they assert in this lawsuit. Regardless, exhaustion of administrative remedies is an issue of subject-matter jurisdiction. *See, e.g.*, *Rhule*, 417 S.W.3d at 442; *Van Indep. Sch. Dist. v. McCarty*, 165 S.W.3d 351, 354 (Tex. 2005). Subject-matter jurisdiction cannot be created by waiver, and parties may raise challenges to subject-matter jurisdiction for the first time on appeal. *See McCarty*, 165 S.W.3d at 354 (reversing court of appeals holding that district waived exhaustion requirement

---

of fact, it is necessary to first exhaust administrative remedies.").

because exhaustion of remedies is a "prerequisite to the trial court's jurisdiction" and jurisdiction "cannot be conferred by waiver"); *Gibson v. Waco Indep. Sch. Dist.*, 22 S.W.3d 849, 851 (Tex. 2000) ("[B]ecause subject matter jurisdiction is essential to the authority of a court to decide a case, it cannot be waived and may be raised for the first time on appeal."). Thus, even if the district had failed to raise this argument below, it would not excuse the parents from exhausting their administrative remedies as the Education Code requires.

## D.    Render or Remand

For the reasons explained above, we conclude that section 7.057(a) requires the parents to exhaust their administrative remedies with the Commissioner, and no exception applies to give the courts jurisdiction before the parents have done so. Although this holding would normally require us to dismiss the parents' claims for lack of jurisdiction, the parents ask us to remand this case to the trial court so that they can amend their pleadings to "cure" the jurisdictional defect by removing all references to the Education Code. Appellate courts generally must remand a case to afford parties an opportunity to cure jurisdictional defects in their pleadings when the parties did not have that opportunity in the first instance because the jurisdictional issue arose for the first time on appeal. *See Rusk State Hosp. v. Black*, 392 S.W. 3d 88, 96−97 (Tex. 2012); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 231 (Tex. 2004). Here, however, the parents had the opportunity to, and did in fact, amend their pleadings in the trial court after the district filed its plea to the jurisdiction and motion to dismiss. *See Miranda*, 133 S.W.3d at 231 (observing that parties had an opportunity to amend their pleadings and did so and were not entitled to another opportunity to replead).

In any event, the right to amend typically arises when the pleadings fail to allege enough jurisdictional facts to demonstrate the trial court's jurisdiction. *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002) ("A plaintiff has a right to amend her pleadings to attempt to cure

pleading defects if she has not alleged enough jurisdictional facts."). Here, the jurisdictional bar arises not from a lack of factual allegations but from the nature of the parents' claims. The parents do not propose to add more jurisdictional facts. Instead, they suggest they can "cure" the jurisdictional defect by changing the claims they are bringing. Generally, remand is a mechanism for parties, over whose claims the trial court may have jurisdiction, to plead facts tending to establish that jurisdiction, not for parties, over whose claims the trial court does not have jurisdiction, to plead new claims over which the trial court does have jurisdiction. *See id.*

Moreover, the parents' contention that they can avoid the Education Code's jurisdictional prerequisites by removing all references to the Code from their pleadings is not well founded. As we have explained and the parents' current pleadings reflect, the district's distribution of education funds is governed by an extensive regulatory scheme that the Legislature has embodied in title 2 of the Education Code. *See* TEX. EDUC. CODE §§ 41.001–46.061; *see also id.* § 7.057(f)(2). The district is a creature of the Legislature, *see* TEX. CONST. art. VII, § 3(d)–(e), endowed with only those powers and duties the Legislature has given it,[14] *see Tex. Coast Utils. Coal. v. R.R. Comm'n of Tex.*, 423 S.W.3d 355, 359 (Tex. 2014) (observing that a statutorily created body "has no inherent authority, and instead has only the authority that the Legislature confers upon it"), and the district's distribution of funds typically must either comply with or contravene the statutory provisions that empower such conduct. *See id.* at 359–60.

Because the parents do not challenge the constitutionality of the school laws that govern the district but instead allege that the district violates the constitution by failing to "meet" the school laws' requirements, their claims necessarily allege a violation of the "school laws of this

---

[14] The Legislature derives powers and duties relating to public education from the Constitution itself. *See* TEX. CONST. art. VII, §§ 1–8.

state." Even if the parents amended their petition to delete all references to the Education Code, the true nature of their complaint would not change. We thus decline their request for a remand.

**D.      Conclusion**

Whether the Clint ISD school board is distributing education funds in a manner that violates the Education Code and the Texas Constitution is "a matter properly belonging to the administration of the school laws." *Warren*, 288 S.W. at 160. The Commissioner, as the "educational leader of the state," TEX. EDUC. CODE ANN. § 7.055(b)(1), oversees the district and its board, as well as the implementation of the state's statutory and constitutional mandates governing the distribution of education funding. Allowing the Commissioner to apply his expertise and exercise his discretion to resolve the parents' complaints promotes an orderly and efficient resolution; and if the parents remain dissatisfied with the Commissioner's actions, "resort to the courts is still open after the agency has acted." *Foree*, 431 S.W.2d at 316 (quoting DAVIS, *supra* p. __). We conclude that section 7.057(a) of the Education Code requires the parents to exhaust their administrative remedies before they can seek relief in the courts.

**III.**
**Disposition**

We reverse the court of appeals' judgment and dismiss this suit for lack of jurisdiction.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: April 1, 2016