**In re Norman F. NEWTON, individually and as treasurer of Associated Republicans of Texas PAC, and Associated Republicans of Texas Political Action Committee, Relators.**

No. 04–0953.

Supreme Court of Texas.

Oct. 26, 2004.

Rehearing Denied Oct. 27, 2004.

Hector DeLeon, Anthony Icenogle, De-Leon Boggins & Icenogle, P.C., Austin, for relators.

Cristen David Feldman, Ivy, Crews & Elliot, P.C., Austin, Susan Lea Hays, Law Office of Susan Hays, Dallas, for real party in interest.

Jonathan D. Pauerstein, Roy R. Barrera, III, Loeffler, Jonas & Tuggey, LLP, San Antonio, for amicus curiae.

Justice HECHT delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice OWEN, Justice O'NEILL, Justice SMITH, Justice WAINWRIGHT, and Justice BRISTER joined.

On October 18, 2004, the first day of early voting for the general election,[1] Bobby Glaze and David Leibowitz, Democratic Party candidates for election to the Texas House of Representatives, districts 5 and 117 respectively, sued Associated Republicans of Texas Political Action Committee, an incorporated general-purpose political committee under the Texas Election Code,[2] and its treasurer, Norman F. Newton, (collectively "ART PAC") for declaratory and injunctive relief, alleging that for four years—since 2000—ART PAC has been soliciting, accepting, and expending funds from other, unconnected corporations in violation of the Election Code and that it "will continue to make corporate-subsidized contributions or expenditures on behalf of plaintiffs [sic] opponents, causing imminent, irreparable harm to the plaintiffs, the integrity of our election process, and the public's faith in our elections."[3] On October 20, following a hearing at which the parties appeared by counsel but presented no evidence, the district court issued a temporary restraining order. Based solely on the plaintiffs' verified seven-page petition, the defendants' answer, and counsel's argument, the court found—

---

1. *See* TEX. ELEC.CODE § 85.001.

2. *See* TEX. ELEC.CODE § 251.001(14).

3. *Glaze v. Newton,* No. GN403441, Plaintiff's Original Petition (53rd Dist. Ct., Travis County, Tex., filed Oct. 18, 2004).

that Associated Republicans of Texas PAC has violated the Texas Election Code by soliciting and accepting funds from unconnected corporations and by expending such funds, all in violation of [sections 253.003, 253.004, 253.005, 253.094, and 253.100 of the Election Code], and unless restrained will continue to expend corporate funds which it received in violation of the Texas Election Code and continue to solicit, and accept, corporate funds in violation of the Texas Election Code. . . . [4]

The TRO prohibited ART PAC and others from soliciting, accepting, or spending corporate funds for fourteen days,[5] the maximum initial period for which a TRO may issue.[6] The fourteenth day will be November 3, the day after the election. The court set a temporary injunction hearing for that day. On October 22, ART PAC petitioned this Court for review by writ of mandamus. We requested a response by October 25. Having considered the petition and response, we now grant relief.

■ ART PAC argues that it has not petitioned the court of appeals for relief,

ordinarily a prerequisite to a petition in this Court,[7] because this is a matter of statewide importance and the election is already in progress. In *Sears v. Bayoud,* a Democratic Party primary candidate for the Supreme Court petitioned this Court to declare a Republican Party primary candidate for the same office ineligible.[8] Relator argued that he was not required to present his petition to the court of appeals first because the issue was one of "statewide application" and the election was imminent.[9] We agreed, citing our opinion in *Thiel v. Harris County Democratic Executive Committee,*[10] in which we granted the petition for mandamus of a Democratic Party candidate for state representative to remove his primary opponent from the ballot without requiring that the petition first be presented to the court of appeals.[11] The plaintiffs in the present case concede that if their candidacies were at stake, the issues could be raised in this Court without first petitioning the court of appeals, but they argue that relators' interests in contributing to their opponents, as well as candidates in other races, do not rise to the same level. We disagree. The issues

4.  *Glaze v. Newton,* No. GN403441, Temporary Restraining Order (53rd Dist. Ct., Travis County, Tex., issued Oct. 20, 2004).

5.  *Id.* ("IT IS, THEREFORE, ORDERED that defendants Norman Newton, individually and as the campaign treasurer of Associated Republicans of Texas PAC, and Associated Republicans of Texas Political Action Committee, and their agents, representatives, servants, officers, employees, directors, and attorneys, and those persons in active concert or participation with whom who receive actual notice of this Order by personal service or otherwise, in this cause, be and hereby are, COMMANDED FORTHWITH TO DESIST AND REFRAIN, FROM THE DATE OF THIS ORDER UNTIL AND TO THE FOURTEENTH DAY AFTER ENTRY OF THIS ORDER OR UNTIL FURTHER ORDER OF THIS COURT, FROM SOLICITING, ACCEPTING, AND/OR SPENDING, DIRECTLY OR INDIRECTLY, ANY CORPORATE OR

UNION TREASURY FUNDS, AS DEFINED IN THE TEXAS ELECTION CODE SECTIONS 253.091, 253.093, AND 1 TEXAS ADMINISTRATIVE CODE 24.1 AND 24.3.").

6.  *In re Texas Natural Res. Conservation Com'n,* 85 S.W.3d 201, 203–205 (Tex.2002); Tex.R. Civ. P. 680.

7.  *See* Tex.R.App. P. 52.3(e) ("If the Supreme Court and the court of appeals have concurrent jurisdiction, the petition must be presented first to the court of appeals unless there is a compelling reason not to do so.").

8.  786 S.W.2d 248, 248–249 (Tex.1990).

9.  *Id.* at 249–250.

10.  534 S.W.2d 891, 895 (Tex.1976).

11.  *Sears,* 786 S.W.2d at 249.

in *Sears* and *Thiel* impacted only one state race; the issues in this case impact all the races to which ART PAC contributes. The statewide importance of the issues in this case is greater than in *Sears* and *Thiel.*

■ The purpose of a TRO is to preserve the status quo,[12] which we have defined as "the last, actual, peaceable, non-contested status which preceded the pending controversy."[13] In the present case, the plaintiffs themselves allege that ART PAC has been raising and using unconnected corporate funds for four years. Nothing in the plaintiffs' verified pleadings, which was the only evidence of any kind before the district court, suggests that the plaintiffs or anyone else has previously contested ART PAC's activities, even though they must be publicly reported. The plaintiffs argue that the continuation of illegal conduct cannot be justified as preservation of the status quo, and of course we agree.[14] But neither should conduct be adjudicated illegal based merely on pleadings and a brief, non-evidentiary TRO hearing when substantial rights

are involved and the issues are far from clear. Thus, for example, in *Janus Films, Inc. v. City of Fort Worth,* we agreed that the trial court did not abuse its discretion in denying a temporary injunction prohibiting any interference with the exhibition of a film until the issue of whether the film was obscene because of a rape scene could be determined on the merits.[15] To have granted relief without resolving the issue would have rendered it moot.[16] Also, in *City of Arlington v. City of Fort Worth,* the court of appeals reversed a temporary injunction prohibiting the City of Arlington from discharging water treatment sludge into its sanitary sewer system and from there to a water treatment plant in the City of Fort Worth.[17] The City of Fort Worth argued that after its water treatment agreement with the City of Arlington expired, the discharge was illegal.[18] The court of appeals acknowledged that "the status quo cannot be a violation of the law",[19] but added:

> That determination [whether the status quo was a violation of the law], however,

---

**12.** *Cannan v. Green Oaks Apartments, Ltd.,* 758 S.W.2d 753, 755 (Tex.1988) (per curiam) ("The issuance of a temporary restraining order, like the issuance of a temporary injunction, is to maintain the status quo between the parties.") (citing *Transport Co. of Texas v. Robertson Transports, Inc.,* 152 Tex. 551, 261 S.W.2d 549, 552 (1953)); *Texas Aeronautics Comm'n v. Betts,* 469 S.W.2d 394, 398 (Tex. 1971) ("A temporary restraining order and, after notice and hearing, a temporary injunction may be granted for the purpose of maintaining the status quo.") (citing *Janus Films, Inc. v. City of Fort Worth,* 163 Tex. 616, 358 S.W.2d 589, 589 (1962) (per curiam)).

**13.** *Janus Films,* 358 S.W.2d at 589.

**14.** *See, e.g., City of San Antonio v. Vakey,* 123 S.W.3d 497, 502 (Tex.App.-San Antonio 2003, no pet.) (affirming temporary injunction, stating that "[w]here the acts sought to be enjoined violate an expressed law, the status quo to be preserved could never be a condi-

tion of affairs where the respondent would be permitted to continue the acts constituting that violation."); *Public Utils. Bd. v. Central Power & Light Co.,* 587 S.W.2d 782, 790 (Tex. Civ.App.-Corpus Christi 1979, writ ref'd n.r.e.) (same); *Houston Compressed Steel Corp. v. State,* 456 S.W.2d 768, 773 (Tex.Civ. App.-Houston [1st Dist.] 1970, no writ) (same); *Rattikin Title Co. v. Grievance Committee of the State Bar of Texas,* 272 S.W.2d 948, 955 (Tex.Civ.App.-Fort Worth 1954, no writ) (same).

**15.** 358 S.W.2d at 589, 590.

**16.** *Id.* at 590.

**17.** 873 S.W.2d 765 (Tex.App.-Fort Worth 1994, writ dism'd w.o.j.).

**18.** *Id.* at 767–768.

**19.** *Id.* at 768.

is the central question of the suit, and should be determined with a full trial on the merits. We hold that the position of the parties just prior to the alleged termination of [their agreement] is the last peaceable uncontested status between these parties that must be preserved by the temporary injunction.... [20]

Similarly, in the case before us, the plaintiffs' allegations raise important and difficult issues that have not been resolved by trial on the merits. Those issues center on the proper construction of section 253.100 of the Election Code and whether that section and others have been violated; indeed, there may well be no violation at all. The plaintiffs assert that violations have been ongoing for years, but nothing in their pleadings suggests a legitimate reason for the plaintiffs to have delayed raising these issues until the day early voting started. Under these circumstances, the status quo to be preserved is that of ART PAC's publicly reported and until now unchallenged activities over the past four years.

By granting a TRO on two days' notice after the election has begun, and by setting a temporary injunction hearing the day after the election is over, the district court has essentially made a final, nonappealable adjudication affecting ART PAC's rights to participate in this election, rights that as ART PAC asserts, implicate its freedom of speech under the United States Constitution and the Texas Constitution. The district court's intention to do so is clear from the TRO, which finds not merely that the plaintiffs have shown by their pleadings a likelihood of success on the merits—the standard required for injunctive relief [21]—but that ART PAC has in fact violated the Election Code. It is not clear why the district court thought it necessary to schedule any further hearing at all, having decided the case on the pleadings as it did. Nor is it clear why a temporary injunction should be scheduled after the election, when these plaintiffs will no longer have the same incentive to pursue relief, if indeed they have any at all, having either won or lost their races. But if the hearing should actually occur and the court, having had the factual and legal issues more fully presented, should be constrained to reconsider, the injury to ART PAC will be irremediable.[22]

Relators and the plaintiffs all urge the Court to construe the Election Code provisions that are in dispute. We decline the invitation. The briefing in this Court on the substantive issues is sparse. Further, fact issues may exist regarding how ART PAC raises and spends corporate funds. In any event, the record here is as incomplete as it was before the district court.

■ Since a temporary restraining order is generally not appealable,[23] and the November 2 election will have concluded before any proceedings in the trial court

---

**20.** *Id.* at 769.

**21.** *See DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 686 (Tex.1990) ("An injunction plaintiff need not establish the correctness of his claim to obtain temporary relief, but must show only a likelihood of success on the merits.").

**22.** *See also Edgewood Indep. Sch. Dist. v. Paiz,* 856 S.W.2d 269, 271 (Tex.App.-San Antonio 1993, no writ) (reversing temporary injunction requiring that students who had not passed TAAS test be permitted to participate in graduation, stating: "The trial court's order reverses the status quo and, in so doing, it provides plaintiff the complete relief he seeks and deprives the school district of any right to contest the matter before the passage of time renders it moot and unremediable. The trial court abused its discretion in rendering such an order.").

**23.** *In re Texas Natural Res. Conservation Com'n,* 85 S.W.3d at 205.

could be appealed, relators have no adequate appellate remedy. We therefore conclude that they are entitled to mandamus relief.

Accordingly, the Court grants the petition for writ of mandamus without hearing oral argument.[24] The district court is directed to vacate, instanter, its temporary restraining order signed October 20, 2004, and to furnish the Clerk of this Court proof of compliance by 4:00 p.m., October 26, 2004. We are confident that the district court will comply, and our writ will issue only if that confidence proves misplaced.

Justice WAINWRIGHT filed a concurring opinion.

Justice WAINWRIGHT, concurring.

Real parties Bobby Glaze and David Leibowitz filed suit on October 18, 2004 contending that the Associated Republicans of Texas Political Action Committee and Norman Newton, its treasurer, (collectively ART PAC) violated provisions of the Texas Election Code by illegally soliciting, accepting, and expending corporate funds for four years and in the 2004 election in detriment to plaintiffs' campaigns for election to the Texas Legislature and to the election process. The trial court issued a temporary restraining order restricting the political speech rights of ART PAC. It held that "Texas Election Code Section 253.100, in conjunction with Sections 253.003, 253.004, 253.005, and 253.094, prohibits corporations and unions from giving their treasury funds to any unconnected general purpose political action committee" and found that ART PAC violated these statutes. Its order further precluded ART PAC from soliciting, accepting, or expending any such funds. The trial court set the temporary injunction hearing on this dispute for November 3, 2004, the day after the election.

Relators seek mandamus relief from the restraining order and argue that the dispute involves issues of statewide importance and urgent time constraints in light of the pending election. Relators further contend that if not resolved immediately their rights under the United States and Texas Constitutions to free speech during this election cycle will be permanently denied.

It is fundamental to a free and democratic society that persons have the right to publicly express their opinions on candidates seeking election to public office and that the candidates have the right to express their opinions on issues of the day. *See Carroll v. President and Com'rs of Princess Anne*, 393 U.S. 175, 182, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968) ("It is vital to the operation of democratic government that the citizens have facts and ideas on important issues before them."). For this reason, the United States Supreme Court vigorously protects speech. With relatively few exceptions, the United States Supreme Court strongly disfavors prior restraints on free speech. *CBS Inc. v. Davis*, 510 U.S. 1315, 1317, 114 S.Ct. 912, 127 L.Ed.2d 358 (1994) ("prior restraints are particularly disfavored"); *Avis Rent a Car Sys. v. Aguilar*, 529 U.S. 1138, 1142, 120 S.Ct. 2029, 146 L.Ed.2d 971 (2000) (Thomas, J. dissenting) (injunctions that create prior restraints on speech raise "the strictest scrutiny known to our First Amendment jurisprudence"). A prior restraint, unlike a subsequent damages action or prosecution, if appropriate, has an immediate and irreversible sanction. *Davis*, 510 U.S. at 1317, 114 S.Ct. 912 (citing *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559, 96 S.Ct. 2791, 49 L.Ed.2d 683

---

**24.** *See* Tex.R.App. P. 52.8(c), 59.1.

(1976)). Accordingly, a prior restraint of expression bears "a heavy presumption against its constitutional validity." *Carroll*, 393 U.S. at 181, 89 S.Ct. 347 (citing *Bantam Books v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963)).

Moreover, "even where this presumption might otherwise be overcome, the Court has insisted upon careful procedural provisions, designed to assure the fullest presentation and consideration of the matter which the circumstances permit." *Carroll*, 393 U.S. at 181, 89 S.Ct. 347. The absence of appropriate evidence and argument from the adverse parties to inform judicial determinations may be "insufficient assurance of the balanced analysis and careful conclusions which are essential in the area of First Amendment adjudication." *Id.* at 183, 89 S.Ct. 347. Without such procedural safeguards for issuance of a prior restraint against speech, the value of the judicial determination and its validity may be diluted. *See id.* (prior restraint against political speech that was issued *ex parte* determined to be invalid).

Real parties filed this lawsuit on October 18 and obtained a temporary restraining order two days later based on real parties' verified pleadings and argument of counsel for the parties. No evidence was taken and the parties had insufficient time to fully and carefully brief the issues. The parties present no record of the hearing in the trial court. An injunction hearing to allow consideration of evidence and further briefing to test the sufficiency of the restraining order was scheduled to occur after the election, when the ability to exercise the constitutional rights at issue would have been moot. The trial court decided the issue on the merits, finding that Relators "violated the Texas Election Code," and did so with the barest of procedural protections for vital First Amendment rights. The circumstances of the issuance of the restraining order raise significant concerns in light of the precautions the Supreme Court warned are necessary under the Constitution.

I join the Court's opinion for the reasons stated therein and for these additional reasons.