# IN THE SUPREME COURT OF TEXAS

No. 15-0139

IN RE STATE OF TEXAS, RELATOR

ON PETITION FOR WRIT OF MANDAMUS

JUSTICE WILLETT, joined by JUSTICE DEVINE, concurring in the dismissal of the petition for writ of mandamus.

Last summer, the United States Supreme Court in *Obergefell v. Hodges* constitutionalized a 50-state right to same-sex marriage.[1] For all practical purposes, that federal constitutional case disposes of this state procedural case. The core controversy—whether the Fourteenth Amendment forbids States from preferring traditional marriage—is decided, although, as with a stone dropped into a pond, assorted spin-off disputes are rippling swiftly throughout post-*Obergefell* America.

I write today not to belabor a societal debate but to underscore a legal point presumably *beyond* debate: Laws matter. When John Adams enshrined the ideal of "a government of laws and not of men" into the 1780 Massachusetts Constitution, he upended things, declaring that citizens should be governed by clear laws consistently applied, not personal whims.[2] Adams was echoing

---

[1] 135 S. Ct. 2584 (2015).

[2] *See* MASS. CONST. pt. 1, art. XXX.

Aristotle, who two millennia earlier wrote, "law should govern."[3] The Rule of Law is one of America's—and Texas's—foundational presumptions. In this case, regrettably, Texas law was frustrated rather than followed.

Section 402.010 of the Government Code plainly requires Texas courts to notify the attorney general of state constitutional challenges.[4] Not only that, section 402.010 also forbids courts from declaring a statute unconstitutional within 45 days after giving such notice.[5] "The purpose of this statute is to provide the attorney general with the opportunity to be heard on issues important to the laws of the state—the laws the attorney general's office is charged with defending and enforcing."[6]

Make no mistake: The Legislature well understands how to give courts wiggle room, and some Texas notice rules expressly permit case-by-case discretion.[7] But not this one. A court's duty to alert the attorney general to constitutional attacks is categorical: "The court shall . . . ."[8] The

---

[3] *See* ARISTOTLE'S POLITICS: A TREATISE ON GOVERNMENT, bk. III, ch. 16, at 117 (William Ellis trans., 1895); *see also* F.A. HAYEK, THE CONSTITUTION OF LIBERTY 145 (1960) ("There is clear evidence that the modern use of the phrase 'government by laws and not by men' derives directly from this statement of Aristotle.").

[4] TEX. GOV'T CODE § 402.010(a) ("The court shall, if the attorney general is not a party to or counsel involved in the litigation, serve notice of the constitutional challenge and a copy of the petition, motion, or other pleading that raises the challenge on the attorney general . . . .").

[5] *Id*. § 402.010(b) ("A court may not enter a final judgment holding a statute of this state unconstitutional before the 45th day after the date notice required by Subsection (a) is served on the attorney general.").

[6] *In re State*, No. 04-14-00282-CV, 2014 WL 2443910, at *2 (Tex. App.—San Antonio, May 28, 2014, orig. proceeding) (mem. op.).

[7] *See, e.g.*, TEX. GOV'T CODE § 75.551(a)(2) (requiring notice to attorneys in a case of a judicial assignment "if it is reasonable and practicable and if time permits"); TEX. AGRIC. CODE § 72.044(b) (sanctioning notice to an opposing party "if the court determines that justice requires the notice"); TEX. R. CIV. P. 245 (permitting courts to set cases for trial "on written request of any party, or on the court's own motion, with *reasonable* notice" (emphasis added)).

[8] TEX. GOV'T CODE § 402.010(a).

Legislature imposed a no-exceptions rule, including for cases—and causes—thought to be exigent or momentous.

In this case, rather than the statutorily mandated 45-day minimum, a mere *one minute* elapsed between the trial court's order allowing the plaintiffs to file their pleadings in paper form (8:51 a.m.) and its order finding that the "unconstitutional statutory and state constitutional prohibitions in Texas against same-sex marriage" were causing the plaintiffs immediate and irreparable damage (8:52 a.m.). Despite the constitutional stakes (or perhaps because of them), the trial court failed to comply with the Legislature's unqualified command that the State's chief legal officer be afforded the opportunity to defend the constitutionality of Texas law.[9]

When violations of law slip uncorrected through the cracks of judicial review (as when a case is dismissed as moot), it may seem that the beneficiaries of such violations receive a free pass.

---

[9] Perhaps the trial court thought itself free to disregard section 402.010. Two days before this litigation began, a Travis County probate court in an estate proceeding had purported to strike down certain Texas marriage laws. The State sought appellate relief that same day. Plaintiffs in today's case referenced the probate court's order in their original petition and application for a temporary restraining order. It is thus possible the trial court believed the probate court's order had altered the status quo and was binding precedent, somehow dispensing with the notification requirement. Possible, maybe. Plausible, hardly.

First, courts are not bound by the decisions of other courts of non-superior jurisdiction. That is, Texas courts are obligated to follow only higher Texas courts and the United States Supreme Court. Second, the trial court knew when it granted the TRO that (1) the State had already appealed the probate court's ruling, and (2) the constitutionality of Texas's opposite-sex marriage laws was also pending in this Court. Third, the trial court's order was more expansive than the probate court's order. The probate court only invalidated sections 2.401 and 6.204(b) of the Family Code and article I, section 32, of the Texas Constitution. By contrast, plaintiffs here challenged, and the trial court invalidated, all "statutory and state constitutional prohibitions in Texas against same-sex marriage, including as set out in and applied through Texas Family Code §§ 2.001, 2.012, and 6.204, and in Article I, § 32 of the Texas Constitution." The trial court thus invalidated laws not previously invalidated by the probate court—sections 2.001 and 2.012, together with all other statutory and constitutional prohibitions of same-sex marriage. Fourth, the notification statute—section 402.010—contains no exceptions. There is nothing opaque or discretionary about it. Texas trial courts are required to notify the attorney general every time Texas law comes under constitutional attack. Period. The probate court's non-precedential order from two days earlier cannot justify the trial court's disregard of section 402.010.

Theoretically, a civil court could declare section 402.010 itself unconstitutional on separation-of-powers grounds, as the Court of Criminal Appeals has done on the criminal-law side. *Ex parte Lo*, 424 S.W.3d 10, 29 (Tex. Crim. App. 2013). That did not happen here. Section 402.010 was not overturned—it was overlooked.

The pass is not free. It comes at the expense of the Rule of Law. Here, the Legislature's notice mandate is unsubtle and unequivocal, as was the trial court's failure to follow it.

Unfortunately, rancorous cultural disputes seem to induce jugglery, by lawyers and judges alike. In 2014, for example, a Texas court of appeals rebuked a trial court for doing the very thing that happened here—declaring Texas marriage law unconstitutional without first alerting the attorney general.[10] But it is precisely in divisive, consequential cases when by-the-book fastidiousness by courts is most vital, to blunt even the appearance of evasive corner-cutting or politicized judging.

This was an invalid invalidation. No matter the cause du jour, no matter the perceived exigencies, Texas law forbids the striking down of Texas law without first respecting the attorney general's statutory opportunity—and constitutional duty—to defend it. Every Texas jurist swears allegiance to the Rule of Law, vowing to "preserve, protect, and defend the Constitution and laws of the United States and of this State, so help me God."[11] That solemn oath comes first—always—not our ideology, not our legacy, and not our desire to be fêted as on the "right side of history."

No doubt, the attorney general's presence in a lawsuit may be unwelcome:

> I understand that in certain proceedings everyone in the courtroom—litigants, counsel, and judges alike—may prefer no involvement by the attorney general. But Texas law commands involvement by the attorney general, no matter how righteous or urgent the cause is thought to be. That's precisely the point of the notice law. The Legislature has determined that state law is entitled to a vigorous defense. The attorney general isn't omnipresent, able to monitor every filing in every courthouse across 254 counties. The tension is between what the parties logically want (their case off the radar) and what Texas legally requires (their case on the radar). The

---

[10] *In re State*, 2014 WL 2443910, at *4 (holding that "the trial court abused its discretion in failing to provide notice to the attorney general of a constitutional challenge to Texas state laws").

[11] TEX. CONST. art. XVI, § 1.

4

notice law recognizes, and forthrightly aims to thwart, the desire to engage in procedural corner-cutting to avoid unwanted attention.[12]

Texas law could not be clearer: The State's chief legal officer—sworn to "preserve, protect, and defend" Texas law—should in fact be permitted to preserve, protect, and defend it. Circumvention of that law, by courts and by officers of courts, is an unacceptable way to litigate fateful constitutional issues. The attorney general may be right. He may be wrong. But he must be heard.[13]

By a 5-4 vote, the Highest Court in the Land has mandated the recognition of same-sex marriage from sea to shining sea. People of goodwill can debate the merits of that ruling, but no one can debate the clarity of section 402.010. A Texas court's notice duty is mandatory—zero exceptions.

My focus today is legal, not cultural. In a judicial system that demands no-favorites adherence to clear and predictable legal rules, furtiveness (to tilt the playing field) and faithfulness (to keep it level) cannot coexist. Faithfully applying the law cannot mean short-circuiting one Texas law in order to strike down another.

A law may be unfashionable. It may even be unconstitutional. But it cannot be undefended.

_____
Don R. Willett
Justice


**OPINION DELIVERED:** April 15, 2016

---

[12] *State v. Naylor*, 466 S.W.3d 783, 804 (Tex. 2015) (Willett, J., dissenting).

[13] *See id.*

5