**AFFIRMED in part; REVERSE and REMAND in part; and Opinion Filed December 20, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-19-00224-CV

**CHRISTINE FLORES DESIO D/B/A PROFESSIONAL CENTER OF GRAND PRAIRIE AND FRANCIS ANTHONY DESIO, JR. A/K/A FRANK DESIO, INDIVIDUALLY,**
**Appellants**
**V.**
**MIKE DEL BOSQUE D/B/A INJURY AND REHAB CENTER IN GRAND PRAIRIE,**
**Appellee**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-04408**

## MEMORANDUM OPINION
Before Justices Schenck, Molberg, and Reichek
Opinion by Justice Reichek

This case involves competing claims in a commercial lease dispute. Following a bench trial, the trial court found Christine Flores Desio d/b/a Professional Center of Grand Prairie and Francis Anthony Desio, Jr. a/k/a Frank Desio Jr., breached several leases but awarded no damages to the tenant, appellee Mike Del Bosque d/b/a Injury and Rehab Center in Grand Prairie. The trial court did, however, award attorney's fees to appellee.

On appeal, appellants challenge the trial court's determination that they, rather than appellee, breached the leases, as well as the award of attorney's fees. For reasons set out below,

we affirm the trial court's judgment that appellants breached the leases but reverse the award of attorney's fees and remand for the trial court to recalculate the amount of such fees.

FACTUAL BACKGROUND

Christine Flores Desio owns the Professional Center of Grand Prairie; her son, Frank, manages the property. Appellants entered into multiple leases with appellee. One lease was for property on the first floor and ended in 2018(the "First-Floor Lease"). Three leases were for second-floor suites (the "Second-Floor Leases") and ended in 2019.

This appeal primarily deals with the Second-Floor Leases, where appellee operated medical labs and "administrative and other related business." Under these leases, appellee defaulted if he abandoned the premises. Abandonment was defined as "[f]ailure of Tenant for five (5) days or more to occupy the Premises for one or more of the purposes permitted under this lease, unless such failure is excused under other provisions of this Lease."

On Monday, November 28, 2016, appellee sent appellants the following email:

Good morning, Frank….

Hope your mother & yourself had a wonderful Thanksgiving….I want to inform you that my lease space upstairs was moved out over the holiday….I am NOT breaking the lease but I would to [sic] offer you to let the lease dissolve so that you could rent it out for more than what I am paying…Everything is shut down and completely turned off…I do have several items that I need to get out this week…Also, there are 3 refrigerators in the walk way that will be removed today….Thank yoy [sic]…

 The following day, appellants excluded appellee from the second-floor premises, changed the locks, and thereafter disposed of the property left on the premises. No notice was given before appellants locked appellee out.

Four months later, appellants locked appellee out of his first-floor suite for failure to pay rent. Appellee obtained a writ of reentry into the premises and resumed operations. Nine days later, however, appellee was locked out again.

Following the second lockout of the first-floor suite, appellee filed this lawsuit against appellants, alleging breach of contract, interference with existing contract, interference with prospective contracts, trespass, and conversion. Appellee sought damages and attorney's fees. Appellants filed an answer in which they raised the affirmative defense of failure to mitigate damages and also counterclaimed for breach of contract. Appellants alleged that appellee defaulted on all of the leases by (1) abandoning the second-floor premises and failing to pay rent and (2) damaging and failing to maintain the first-floor premises. They sought to recover unpaid lease payments, late fees, returned check charges, and unpaid prorated utilities and taxes, repair costs for damages to both the first- and second-floor premises, and mitigation expenses. In addition, they sought recovery of their attorneys' fees.

The case was tried without a jury to the court. Frank Desio testified that he did not know how many days appellee spent moving out of the second-floor premises but said he "recognized" activities prior to Thanksgiving that "suggested" appellee abandoned the property. In particular, he said he saw appellee's brother moving an executive chair from the premises on the day before Thanksgiving Day. After the staff had left for the day, he said he went upstairs and saw that there "was no equipment, no furniture, nothing to indicate that there was an active business."

Nevertheless, Frank also acknowledged that on the following Monday, November 28, he observed appellee moving belongings from the second-floor suites. On that same morning, he received appellee's email about moving out. After receiving the email, Frank contacted counsel, who advised him to "watch and see, touch nothing, do nothing," and to "wait a minimum of seven to ten days" to act. The next day, both appellee and Frank called the Grand Prairie police when appellee returned but was excluded from the premises.[1] By the following day, the locks on the

---

[1] The police call notes show that appellee complained that he was being locked out of the premises because he gave notice he was moving out, even though he had paid rent.

suite doors had been changed. Subsequently, Frank called the scrapyard to retrieve appellee's property. Frank acknowledged that at the time of the lockout, appellee had paid rent for both November and December and had offered to continue to pay rent for the premises. Frank acknowledged that he did not give appellee notice before locking him out of the premises, but two months after the lockout, appellants gave appellee notice of default for failure to pay rent in January.

Appellee testified that he was in the process of moving on Monday, November 28, and, in contrast to Frank's testimony, said he left behind a copier, office furniture, and office supplies but had moved the lab equipment by that date. He said he did not intend to abandon the second-floor leases; rather, as his business grew, he planned to use them for physician offices and storage space, uses he believed were consistent with the terms of the leases. At trial, he testified he told Frank he wanted to continue to use the space, although he acknowledged that he testified to the contrary at his deposition.

Appellee said he never had access to the premises once the locks on the doors were changed. He also said he told Frank that he would pick up the refrigerators, which were left in the breezeway area, within 24 hours, and Frank told him he had "three days." Nevertheless, appellee said the refrigerators were "gone" on the second day. He did not know what happened to the copy machine, office furniture, and office supplies left inside the suites. He valued the copier at $2000, the refrigerator at "a couple of hundred dollars each," and the office furniture and supplies at $200 to $300.

At the conclusion of the evidence and after hearing argument, the trial court made oral findings that appellee abandoned the lease but was entitled to twenty days' notice under the leases, which he did not receive. Further, the court found that appellee was the "prevailing party predominantly" and announced its intent to award attorney's fees. The court directed appellee to

provide appellants with his attorney's fee information, so that appellants could make any objections.

Subsequently, the trial court rendered judgment in which it found in favor of appellee on (1) on appellee's claims for breach of contract, interference with existing contract, interference with prospective contracts, trespass to real property, and conversion; (2) appellants' claim for breach of contract; (3) appellants' affirmative defense of failure to mitigate damages; and (4) appellees' affirmative defense of prior material breach. Appellee elected to recover on his breach of contract claim. The trial court awarded appellee zero damages, but ordered that he recover $75,033 in attorney's fees and conditional attorney's fees of $30,000 for an appeal to this Court, and another $30,000 for an appeal to the Supreme Court.

One month later, the trial court signed written findings that were contrary to its oral pronouncements, i.e., that appellee abandoned the premises. As relevant here, the trial court found that appellee (1) moved out some of his equipment from the second-floor premises on or about Monday, November 28, 2016, and left three refrigerators, a copier, office furniture, and office supplies at the premises; (2) had been moving for less than five days at the time of lockout of the second-floor premises; and (3) did not leave the second-floor premises unoccupied for five days or more prior to the time of the lockout. Further, the trial court found that (1) appellee was locked out of the second-floor premises on or about Wednesday, November 30, 2016 when appellants changed the locks;[2] (2) appellants intentionally prevented appellee from entering the premises; and (3) appellee was current on rent payments for November and had prepaid rent for December 2016.

In conclusions of law, the trial court determined with respect to the Second-Floor Leases that (1) appellee was not in default under any provision; (2) appellants breached the leases by unlawfully locking out appellee; (3) appellee was entitled to recover zero damages; (4) appellee

---

[2] In their brief, appellants assert they locked out appellee a day earlier, November 29, as shown by the police report.

was entitled to recover reasonable and necessary attorneys' fees on his breach of contract claim against appellants as well as on appellants' breach of contract counterclaim against him; and (5) appellants did not comply with the obligations of the contract for the Second-Floor Leases. With respect to the First-Floor Lease, the trial court concluded (1) appellee was not in default, (2) appellants breached the lease, (3) appellee was entitled to zero damages for the breach; (4) appellee was entitled to recover reasonable and necessary attorneys' fees on both his breach of contract claim against appellants and on appellants' counterclaim against him; and (4) appellants did not comply with the obligations of the lease. This appeal ensued.

On appeal, appellants challenge the trial court's liability findings only as to the Second-Floor Leases and generally argue that (1) the trial court misconstrued the leases to require notice for abandonment and (2) the evidence conclusively established that appellee breached the lease by abandoning the second floor premises. Additionally, appellants argue the award of attorney's fees to appellee was improper because he was not a prevailing party, and, even if proper, the amount was excessive.

BREACH OF LEASE

We begin with appellants' argument that the trial court improperly rejected their breach of contract claim for breach of the Second-Floor Leases. Appellants argue the evidence "conclusively refutes" the trial court's determination that they breached the Second-Floor Leases and conclusively showed that appellee breached when he abandoned the premises.

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Sheetz v. Slaughter*, 503 S.W.3d 495, 502 (Tex. App.—Dallas 2016, no pet.). When the appellate record contains a reporter's record, as in this case, findings of fact are not conclusive and are binding only if supported by the evidence. *Id*. We review a trial court's findings of fact

–6–

under the same legal and factual sufficiency of the evidence standards used when determining if sufficient evidence exists to support an answer to a jury question. *Id*.

When an appellant challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which he had the burden of proof, he must show the evidence established all vital facts as a matter of law. *PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 710 (Tex. App.—Dallas 2011, pet. denied). In this instance, we must credit evidence favorable to the finding if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). If there is no evidence to support the finding, we review the entire record to determine if the contrary proposition is established as a matter of law. *PopCap Games*, 350 S.W.3d at 710. We sustain the issue only if the contrary proposition is conclusively established—that is, if appellants conclusively established that appellee abandoned the lease. *See id*.

Here, appellants challenge the trial court's findings that (1) appellee moved out some of his equipment from the second-floor premises on or about Monday, November 28, 2016, and left behind three refrigerators, a copier, office furniture, and office supplies; (2) on or about Wednesday, November 30, appellee was locked out of the premises as appellants changed the door locks; and (3) appellee did not leave the second-floor premises unoccupied for five or more days prior to and at the time of the lockout. They argue the evidence showed appellee abandoned the premises on November 23, the day before Thanksgiving.

Abandonment required a showing that appellee failed to occupy the premises, for five days or more, for one of the purposes permitted under the lease. As evidence of abandonment, appellants direct us to appellee's November 28 email that he "moved out over the holiday" and Frank's testimony that he saw staff moving furniture from the second floor on the day before Thanksgiving (November 23), went upstairs afterwards, and saw that there was "no equipment, no

furniture, or anything to indicate that there was any business activity." They argue that this evidence is conclusive proof that appellee had abandoned the premises for at least five days at the time appellee was locked out "on or about November 29, 2016."

We cannot agree. Although appellee said he had "moved out over the holiday," the email does not constitute conclusive proof that appellee had moved out on November 23. And neither does the cited portion of Frank's testimony. As set out previously, both Frank and appellee testified that appellee was continuing to move belongings out of the premises on November 28. Appellee testified a copier, office furniture, and office supplies were still in his suites. The email was notice to appellants on November 28 that "[e]verything" had been "shut down and completely turned off" but that "several items" remained on the premises that appellee needed to retrieve. This evidence, along with the fact that the "move out" was occurring over a long holiday weekend, was sufficient for the trial court to reasonably determine that the premises had not been abandoned for five days or more before the lockout, regardless of whether that occurred on November 29 or 30.

To the extent appellants raise a factual sufficiency argument,[3] we are similarly unpersuaded. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam) (explaining that when party attacks factual sufficiency of adverse finding on issue on which he had burden of proof, party must demonstrate on appeal that adverse finding is against the great weight and preponderance of the evidence). Neither Frank's testimony nor appellee's email render the evidence so weak or the finding so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id*.

---

[3] In their brief, appellants provide a brief standard of review for factual sufficiency, but argue the evidence conclusively shows appellee abandoned the premises. They ask us to reverse the judgment in favor of appellee and render judgment in their favor in the amount of $36,000 for breach of the leases and remand for a determination of appellants' attorney's fees.

Finally, appellants devote a large portion of their briefing on this issue to the fact that the trial court made an oral finding that subsequently conflicted with his written findings of fact. But written orders or judgments control over conflicting oral pronouncements. *Kaur-Gardner v. Keane Landscaping, Inc.*, No. 05-17-00230-CV, 2018 WL 2191925, at *4 (Tex. App.—Dallas May 14, 2018, no pet.) (mem. op.). The written findings and judgment reflect nothing more than that the trial court changed its mind after oral pronouncement and before judgment. Having concluded the evidence is legally and factually sufficient to support the trial court's findings, we overrule issues two and four. Our disposition of these issues makes it unnecessary to address appellants' first issue, which complains that the trial court misconstrued the lease to require them to give 20 days' notice when a tenant abandons the lease.

## ATTORNEY'S FEES

Appellants' remaining issues attack the award of attorney's fees under both the First- and Second-Floor leases. With respect to attorney's fees, the trial court made the following findings of fact:

> 52. Plaintiff retained the services of Tailim Song and the attorneys at Tailim Song Law Firm, promising to pay a reasonable attorney's fee for said services.

> 53. The total sum of $75,033.00 are reasonable and necessary attorneys' fees for prosecuting Plaintiff's claims for breaches of contracts and to defend Plaintiff from Defendants' claims for breaches of contracts in Dallas County, Texas.

In their third and fifth issues, appellants complain that appellee did not prevail on his breach of contract claims because he was awarded no damages and thus cannot be awarded attorney's fees under the terms of the leases. In their sixth issue, they alternatively argue that the amount awarded was excessive. We begin with appellants' argument that appellee was not a "prevailing party" under the leases because they were awarded zero damages.[4]

---

[4] In his amended petition, appellee also sought attorney's fees under chapter 38 of the Texas Civil Practice and Remedies Code. But, to recover attorney's fees under section 38.001, a party must prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages. *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). Because appellee did not recover damages, the statute does not apply.

To resolve this issue, we consider both the language in the First- and Second-Floor Leases and the relevant case law. Because the language regarding attorney's fees is different in the First- and Second- Floor Leases, we address each separately.

## 1. Second-Floor Leases

The Second-Floor Leases all contain the same language with respect to attorney's fees. Section 29 provides:

> **29.1 <u>Attorney Fees</u>.** If this lease is placed in the hands of any attorney due to a default in the payment or performance of any of its terms, the defaulting party shall pay, immediately upon demand, the other party's reasonable attorney fees, collection costs, costs of litigation, even though no suit or action is filed thereon, and any other fees or expenses incurred by the nondefaulting party.

> **29.2 <u>Types of Fees</u>.** For purposes of this Lease the term attorney fees includes all charges of the prevailing party's attorneys and their staff (including without limitation legal assistants, paralegals, word processing, and other support personnel) and any post-petition fees in a bankruptcy court. . . .

These provisions broadly allow for the recovery of attorney's fees incurred by the "nondefaulting" or "prevailing" party, against the party who defaulted on the lease, and regardless of whether suit is actually filed and a judgment obtained. Here, the trial court determined, based on the evidence, that appellee did not default on Second-Floor Leases and that appellants breached the leases but awarded no damages.

In *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469 (Tex. 2019), also a commercial lease case, the supreme court addressed whether a party, who did not recover damages but defeated the defendant's counterclaim, could be the "prevailing party" under the lease. There, the tenant (UTSW) used the premises it leased from Rohrmoos for a dialysis clinic. 578 S.W.3d at 475. The building suffered significant water penetration, and UTSW viewed the premises as unsuitable for its intended purpose, terminated the lease early, and vacated the premises, while still allegedly owing about $250,000 in unpaid rent. *Id*. at 476. UTSW sued Rohrmoos for breach of warranty and breach of the implied warranty of suitability. Rohrmoos

counterclaimed for negligence and breach of contract. Each asserted affirmative defenses to the others' claims. *Id*. A jury ultimately determined that both parties breached the contract, but that Rohrmoos breached first. UTSW did not submit a damage question, so it was awarded no damages. The jury determined reasonable attorneys' fees for UTSW, which the trial court incorporated into the judgment. *Id*. 476–77. On appeal, Rorhmoos challenged the award of attorney's fees, arguing that UTSW was not a "prevailing party" and was therefore not entitled to attorney's fees.

In *Rohrmoos*, the lease provided that "[i]n any action to enforce the terms of this Lease, the prevailing party shall be entitled to an award for its reasonable attorneys' fees." *Rohrmoos*, 578 S.W.3d at 484. The contract, however, did not define prevailing party. Relying on its previous opinion in *Intercontinental Group Partnership v KB Home Long Star* LP, 295 S.W.3d 650 (Tex. 2009), the court reiterated that to "prevail" means to "obtain actual and meaningful relief, something that materially alters the parties' legal relationship." *Id*. at 485–86 (quoting *KB Home*, 295 S.W.3d at 659). Using that definition, the court reasoned UTSW was not just a plaintiff; it also successfully defended against Rohrmoos's breach of contract counterclaim and the trial court rendered a take-nothing judgment in UTSW's favor as a counter-defendant. Thus, the court concluded, the jury's finding and the trial court's judgment "altered the legal relationship between the parties," meaning UTSW was a "prevailing party" under the lease. *Id*. at 486.

Under the broad language of the Second-Floor Leases, we agree, as the court did in *Rohrmoos*, that appellee was not just a plaintiff; he also successfully defended against appellants' breach of contract counterclaim that sought unpaid lease payments and repair costs for damages to the premises. In the findings of fact and in the judgment, the trial court found in appellee's favor as a counter-defendant. In doing so, the findings and judgment altered the legal relationship

–11–

between the parties, and, under the reasoning in *Rohrmoos*, appellee is a "prevailing party" entitled under these leases to reasonable and necessary attorney's fees.

## 1. First Floor lease

The First Floor lease provides as follows:

**30.  Attorneys' Fees.**

In the event either party shall fail to comply with any of the covenants, conditions, obligations, rules, or regulations imposed by this Texas Commercial Lease or the laws of the state of Texas, and suit is brought for damages or enforcement, the losing party shall pay to the prevailing party reasonable attorneys' fees, costs, and expenses incurred in prosecuting these suits.

This provision is unlike that in the Second-Floor Leases or *Rohrmoos* where the language of the contracts was broad enough to include the successful defendant against a counterclaim as a "prevailing party." Here, the lease specifically requires that the attorneys' fees be incurred by the "prevailing party" in "prosecuting these suits." "Prosecute" means "to institute legal proceedings against" or "to institute and carry on a legal suit or prosecution:  sue." *Prosecute*, WEBSTER'S THIRD NEW INT'L DICTIONARY UNABRIDGED (1981). Similarly, Black's Law Dictionary defines "prosecute" as "[t]o commence and carry out a legal action <because the plaintiff failed to prosecute its contractual claims, the court dismissed the suit>." *Prosecute*, BLACK'S LAW DICTIONARY (8TH ed. 1999). Thus, we read this provision to limit an award of attorney's fees to only those incurred by a prevailing plaintiff, not a counter-defendant, and conclude the analysis in *Rohrmoos* regarding prevailing defendants does not apply. Instead, to determine whether appellee was a prevailing plaintiff, we turn to the supreme court's decision in *KB Home*.

In *KB Home*, the court focused on whether a plaintiff prevailed for purposes of attorney's fees when the jury found the defendant violated the contract but awarded no money damages to

the plaintiff.[5] 295 S.W.3d at 652. The court explained that "[w]hether a party prevails turns on whether the party prevails upon the court to award it something, either monetary or equitable." *Id.* at 655. KB Homes, however, "got nothing except a jury finding" that Intercontinental violated the contract. *Id.* "It recovered no damages; it secured no declaratory or injunctive relief; it obtained no consent decree or settlement in its favor; it received nothing of value of any kind, certainly none of the relief sought in its petition." *Id.* Nor did the outcome materially alter the legal relationship between the parties. *Id.* The court thus concluded a stand-alone finding on breach of contract confers no benefit, and a zero on damages "necessarily zeroes out 'prevailing party' status for KB Homes." *Id.* at 655–66.

Here, appellee obtained nothing in the action he prosecuted other than a finding that appellants breached the contract. Like *KB Homes*, the judgment did not award appellee any damages, declaratory or injunctive relief, or any other thing of value. Under these circumstances, we conclude the findings and judgment did not materially alter the legal relationship between the parties. Appellee nevertheless relies on *Rohrmoos* to argue that he is the prevailing party on his own breach of contract claims under a "main-issue analysis." He directs us to the trial court's findings that (1) he did not breach either the First Floor or Second Floor leases, (2) he was entitled to damages on his breach of contract claims regarding both First and Second Floor leases, (3) he was entitled to his attorney's fees for both his original breach of contract claims and for successfully defending against appellants' breach of contract counterclaims, and (4) he suffered monetary damages from the breach of both the First and Second Floor leases but was awarded no damages because he failed to establish them with "reasonable certainty." But, as explained

---

[5] The contract entitled the "prevailing party" to recover its attorney's fees from the losing party, if either party brought an action to enforce the terms of the contract. *KB Home*, 295 S.W.3d at 652. The jury found Intercontinental breached the written contract but awarded zero damages and $66,000 in attorney's fees. Further, the jury rejected Intercontinental's oral-agreement claim. *Id.* Both parties claimed to be the "prevailing party" and sought attorney's fees. *Id.* The trial court ultimately awarded judgment in KB Home's favor for $66,000. In considering the issue, the court did not consider whether this language was broad enough to allow a counter-defendant to recover attorney's fees as a prevailing party because the issue was not preserved for review. *KB Home*, 295 S.W.3d at 659 ("The issue of whether a breaching-but-nonpaying defendant can be a 'prevailing party' under an attorney's-fees provision like this is interesting legally, but not before us procedurally.").

previously, appellee could recover attorney's fees under this lease only if he was the prevailing *plaintiff*. So, even with the trial court's liability findings, the problem remains that appellee did not prove any damages and the failure to do so "necessarily zeroes out 'prevailing party' status under the First Floor lease. *Id*. at 655–66.

To the extent appellee asserts he is entitled to attorney's fees because he obtained a temporary restraining order at the time he filed his lawsuit, we again cannot agree. The purpose of a temporary restraining order is to maintain the status quo between the parties. *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (orig. proceeding). It does not resolve the merits of the underlying dispute. As the court said in *KB Home*, the judgment is critical to the prevailing-party determination, and here, the judgment did not award any injunctive relief. 295 S.W.3d at 656. We conclude appellee was not a prevailing plaintiff as required by the First-Floor Lease; consequently, the trial court erred by awarding attorney's fees on this claim.

Finally, in two sentences, appellants assert they should be awarded their attorney's fees as to appellee's claims under the First-Floor Lease. They assert that because appellee did not prevail on his claim, they "substantially prevailed" under the terms of the lease. But for the same reasons set out above, we conclude appellants also were not a prevailing plaintiff under the lease and reject their argument.

We conclude the First-Floor Lease agreement did not provide a basis for an award of attorney's fees under the circumstances here. Because the trial court awarded an aggregate sum for attorney's fees under both the First- and Second-Floor leases, and an award was improper under the former, we sustain issues three and four in part. This disposition makes it unnecessary to address the sixth issue.

We reverse the trial court's judgment with respect to the award of attorney's fees and remand this cause for the trial court to determine the amount of reasonable and necessary attorney's

fees to be awarded to appellee only as to the Second-Floor Leases.  In all other respects, we affirm the trial court's judgment.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

190224F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHRISTINE FLORES DESIO D/B/A
PROFESSIONAL CENTER OF GRAND
PRAIRIE AND FRANCIS ANTHONY
DESIO, JR. A/K/A FRANK DESIO,
INDIVIDUALLY, Appellants

On Appeal from the 14th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-17-04408.
Opinion delivered by Justice Reichek;
Justices Schenck and Molberg participating.

No. 05-19-00224-CV        V.

MIKE DEL BOSQUE D/B/A INJURY
AND REHAB CENTER IN GRAND
PRAIRIE, Appellee

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment awarding attorney's fees to appellee Mike Del Bosque d/b/a Injury and Rehab Center in Grand Prairie, and we **REMAND** this cause to the trial court to determine the amount of attorney's fees to be awarded to appellee only as to the Second-Floor Leases. In all other respects, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 20th day of December 2019.