# Supreme Court of Texas

No. 23-0994

In re State of Texas; Attorney General of Texas; Ken Paxton, in his official capacity as Attorney General of Texas; Texas Medical Board; and Stephen Brint Carlton, in his official capacity as Executive Director of the Texas Medical Board,

*Relators*

On Petition for Writ of Mandamus

**PER CURIAM**

Kate Cox and her husband Justin are the parents of two children. Ms. Cox is about twenty weeks pregnant with a third child—one who has received a tragic diagnosis. The Coxes and their doctor sue to prevent the enforcement of Texas laws that generally prohibit abortion.

These laws reflect the policy choice that the Legislature has made, and the courts must respect that choice. Part of the Legislature's choice is to permit a significant exception to the general prohibition against abortion. And it has delegated to the medical—rather than the legal—profession the decision about when a woman's medical circumstances warrant this exception. The law allows an abortion when:

in the exercise of reasonable medical judgment, the pregnant female . . . has a life-threatening physical condition aggravated by, caused by, or arising from a pregnancy that places the female at risk of death or poses a serious risk of substantial impairment of a major bodily function unless the abortion is performed or induced.

TEX. HEALTH & SAFETY CODE § 170A.002(b)(2).

Only a doctor can exercise "reasonable medical judgment"[1] to decide whether a pregnant woman "has a life-threatening physical condition," making an abortion necessary to save her life or to save her from "a serious risk of substantial impairment of a major bodily function." If a doctor, using her "reasonable medical judgment," decides that a pregnant woman has such a condition, then the exception applies, and Texas law does not prohibit the abortion.

In this case, the pleadings state that Ms. Cox's doctor—Dr. Damla Karsan—believes Ms. Cox qualifies for an abortion based on the medical-necessity exception. But when she sued seeking a court's pre-authorization, Dr. Karsan did not assert that Ms. Cox has a "life-threatening physical condition" or that, in Dr. Karsan's reasonable medical judgment, an abortion is necessary because Ms. Cox has the type of condition the exception requires. No one disputes that Ms. Cox's pregnancy has been extremely complicated. Any parents would be devastated to learn of their unborn child's trisomy 18 diagnosis. Some difficulties in pregnancy, however, even serious ones, do not pose the

---

[1] The law defines "reasonable medical judgment" as "a medical judgment made by a reasonably prudent physician, knowledgeable about a case and the treatment possibilities for the medical conditions involved." TEX. HEALTH & SAFETY CODE § 170A.001(4).

heightened risks to the mother the exception encompasses. The exception requires a doctor to decide whether Ms. Cox's difficulties pose such risks. Dr. Karsan asked a court to pre-authorize the abortion yet she could not, or at least did not, attest to the court that Ms. Cox's condition poses the risks the exception requires.

Despite this, the trial court ruled that a prospective abortion would "fall within the medical exception" to Texas's abortion laws. Based solely on the verified pleading, it issued an order restraining the Attorney General from enforcing the abortion laws against Dr. Karsan and others related to the case.[2] The State seeks relief from the trial court's order.

We note at the outset that we may grant mandamus relief when the trial court effectively resolves the merits of a case in a temporary restraining order. *See In re Newton*, 146 S.W.3d 648, 652-53 (Tex. 2004) (ordering the trial court to vacate a temporary restraining order where appeal could not be heard until after the order caused irremediable harm to the party). The State has also challenged the trial court's jurisdiction, arguing that the plaintiffs have not pleaded a claim for

---

[2] The trial court restrained enforcement under Texas Health and Safety Code Sections 170A.001-.002, 171.002(3), 171.203-.205, 171.152, 171.0124, and 285.202. However, as the Attorney General admits for these purposes, he has no authority to impose criminal penalties. *See State v. Stephens*, 663 S.W.3d 45, 55, 57 (Tex. Crim. App. 2021). Nor is the Attorney General or any other state official authorized to enforce Subchapter H of Chapter 171. *Whole Woman's Health v. Jackson*, 642 S.W.3d 569, 575 (Tex. 2022). The trial court had no jurisdiction to restrain the Attorney General from enforcing laws that he has no power to enforce. Chapter 170A, however, is enforceable by the Attorney General through the imposition of civil penalties. TEX. HEALTH & SAFETY CODE § 170A.005. We address the trial court's order limited to this context.

relief that the court has the power to decide. The trial court did not rule on the State's plea, as it must "at its earliest opportunity." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *see also In re Abbott*, 601 S.W.3d 802, 805 (Tex. 2020) (concluding a trial court without jurisdiction cannot order relief, even temporarily).[3] The trial court declared the abortion laws unenforceable based on the court's opinion that the exception applies.

A woman who meets the medical-necessity exception need not seek a court order to obtain an abortion. Under the law, it is a doctor who must decide that a woman is suffering from a life-threatening condition during a pregnancy, raising the necessity for an abortion to save her life or to prevent impairment of a major bodily function. The law leaves *to physicians*—not judges—both the discretion and the responsibility to exercise their reasonable medical judgment, given the unique facts and circumstances of each patient.

---

[3] Because jurisdiction implicates the trial court's power to act, we would normally "address the issue first" before resolving the merits. *Abbott v. Anti-Defamation League Austin, Sw., & Texoma Regions*, 610 S.W.3d 911, 917 (Tex. 2020); *see BP Am. Prod. Co. v. Laddex, Ltd.*, 513 S.W.3d 476, 479 (Tex. 2017). To obtain injunctive relief at this early stage, however, the parties seeking relief must demonstrate both that the trial court possessed jurisdiction and that they are likely to prevail on the merits. The failure of either means that temporary injunctive relief against the State is unavailable. *See Anti-Defamation League*, 610 S.W.3d at 917. Because we conclude that the Coxes have not demonstrated that they are entitled to relief, we refrain at this stage from determining the jurisdictional challenges the State presents.

Counsel for the Coxes and Dr. Karsan has informed the Court that Ms. Cox has traveled to another state with the intention of seeking medical care, but no party has suggested that the relief they request against the Attorney General's enforcement power is moot.

Though the statute affords physicians discretion, it requires more than a doctor's mere subjective belief. By requiring the doctor to exercise "reasonable medical judgment," the Legislature determined that the medical judgment involved must meet an objective standard.[4] Dr. Karsan asserted that she has a "good faith belief" that Ms. Cox meets the exception's requirements. Certainly, a doctor cannot exercise "reasonable medical judgment" if she does not hold her judgment in good faith. But the statute requires that judgment be a "reasonable medical" judgment, and Dr. Karsan has not asserted that her "good faith belief" about Ms. Cox's condition meets that standard. Judges do not have the authority to expand the statutory exception to reach abortions that do not fall within its text under the guise of interpreting it. The trial court erred in applying a different, lower standard instead of requiring reasonable medical judgment.

Though courts may not expand the statute beyond the Legislature's remit, limiting a physician's judgment by construing the exception more narrowly than the statute provides would likewise be error. For example, the statute does not require "imminence" or, as Ms. Cox's lawyer characterized the State's position, that a patient be "about to die before a doctor can rely on the exception." The exception does not hold a doctor to medical certainty, nor does it cover only adverse results

---

[4] This case is not premised on the constitutionality of the abortion statutes generally or the objective standard specifically. Dr. Karsan has raised constitutional challenges to the statute in *State v. Zurawski*, No. 23-0629, which is pending before our Court. The parties do not raise these issues in this petition for writ of mandamus, however, and we leave them for future resolution.

that will happen immediately absent an abortion, nor does it ask the doctor to wait until the mother is within an inch of death or her bodily impairment is fully manifest or practically irreversible. The exception does not mandate that a doctor in a true emergency await consultation with other doctors who may not be available. Rather, the exception is predicated on a doctor's acting within the zone of reasonable medical judgment, which is what doctors do every day. An exercise of reasonable medical judgment does not mean that every doctor would reach the same conclusion.

A pregnant woman does not need a court order to have a life-saving abortion in Texas. Our ruling today does not block a life-saving abortion in this very case if a physician determines that one is needed under the appropriate legal standard, using reasonable medical judgment. If Ms. Cox's circumstances are, or have become, those that satisfy the statutory exception, no court order is needed. Nothing in this opinion prevents a physician from acting if, in that physician's reasonable medical judgment, she determines that Ms. Cox has a "life-threatening physical condition" that places her "at risk of death" or "poses a serious risk of substantial impairment of a major bodily function unless the abortion is performed or induced."

The points we have made above provide some clarity about the legal standards and framework for this sensitive area of Texas law. The courts cannot go further by entering into the medical-judgment arena. The Texas Medical Board, however, can do more to provide guidance in

response to any confusion that currently prevails.[5]  Each of the three branches of government has a distinct role, and while the judiciary cannot compel executive branch entities to do their part, it is obvious that the legal process works more smoothly when they do.

Without hearing oral argument, TEX. R. APP. P. 52.8(c), we conditionally grant relief and direct the trial court to vacate the temporary restraining order.  We are confident that the trial court will comply, and the writ will issue only if the trial court fails to do so.  We dismiss the request for an emergency stay as moot.

Justice Devine and Justice Blacklock concur in the order granting relief.


**OPINION DELIVERED:** December 11, 2023

---

[5] For an interpretation of the statute in the abstract, the law empowers the Texas Medical Board to issue rules to regulate the practice of medicine. TEX. OCC. CODE §§ 152.001, 153.001.  The Board could assess various hypothetical circumstances, provide best practices, identify red lines, and the like.  It has provided such needed guidance in other contexts, such as its COVID-19, Guidance & Frequently Asked Questions (FAQs), available at https://www.tmb.state.tx.us/page/coronavirus.  And if the Board does provide guidance, it can request an opinion from the Attorney General, who has substantial civil-enforcement authority, regarding the legal effect of physicians' compliance with the Board's guidance.  *See* TEX. GOV'T CODE § 402.042(b)(5).