# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00519-CV

---

**Maha Mansoor, Appellant**

**v.**

**University of Texas at Austin, Appellee**

---

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-23-001831, THE HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

In the underlying lawsuit, appellant Maha Mansoor challenged appellee The University of Texas at Austin's actions during and after its investigation into academic misconduct. The trial court granted the University's plea to the jurisdiction and dismissed Mansoor's claims with prejudice. By several issues that we interpret as one, Mansoor argues that the trial court erred by granting the plea. We affirm.

## BACKGROUND[1]

In the Fall of 2022, Mansoor enrolled in the University, seeking a Master of Science in Computer Science. In her first semester, Mansoor enrolled in two graduate-level courses. In one of those courses, the teaching assistant accused her of plagiarizing her midterm exam. On

---

[1] We derive the facts recited in this section from Mansoor's petition and her response to the University's plea to the jurisdiction.

November 11, 2022, the course professor referred this alleged misconduct to the University's administration for an investigation.

On December 1, 2022, the University's Student Conduct and Academic Integrity Office met with Mansoor to determine whether she had committed plagiarism, and on December 6, 2022, it issued an administrative-disposition form, notifying Mansoor that it found she had plagiarized her midterm in violation of the University's institutional rules and the course syllabus. Additionally, the administrative-disposition form recommended the following disciplinary measures: (1) deferred suspension until December 6, 2023; (2) a zero on her midterm; and (3) tutoring from a learning specialist on educational and time management skills. The form further provided that Mansoor could appeal the committee's findings and decision by requesting a formal hearing.

On December 12, 2022,[2] Mansoor signed the form, indicated that she wished to dispute the results of the investigation and the recommended disciplinary measures, and requested a formal hearing. On December 16, 2022, Mansoor received an email from the coordinators for her program, informing her that she was "placed on Academic Probation due to [her] cumulative GPA falling below the required 3.00." The email further detailed that if Mansoor's GPA was not raised to a 3.00 after the spring semester, she would "be dismissed from the program."

On April 5, 2023, while her appeal and final hearing were pending, Mansoor sued the University for breach of contract, alleging that it breached its internal policies by: (1) referring Mansoor's conduct for an investigation prior to sending her a "faculty disposition form"; (2) assigning a zero, rather than an incomplete, as her grade on the midterm exam; and (3) placing

---

[2] The form provided that it must be "returned to Student Conduct within five (5) days of receipt." The record does not indicate when Mansoor received the form.

her on academic probation while the disciplinary investigation was underway. Mansoor alleged that these breaches constituted a breach of contract. Mansoor also complained that "the whole student misconduct investigation was an unfair and unjustified process." She asserted that if she had been assigned a zero on the midterm exam after the investigation had concluded, she "would have one more semester to buckle her GPA back to 3.0," but because the zero was assigned in the Fall of 2022, she faced academic suspension at the conclusion of the Spring 2023 semester. Mansoor sought money damages, including but not limited to "her entire tuition, educational expenses, loss of opportunity for a good paying job, [and] attorney costs."

The University filed a plea to the jurisdiction, contending that its sovereign immunity divested the trial court of subject-matter jurisdiction over Mansoor's claims.

Mansoor filed a response to the University's plea and attached seven exhibits: (1) the University's policies related to student conduct and academic integrity; (2) the December 6, 2022 administrative disposition form; (3) an email from the graduate program coordinator informing her that she was required to raise her GPA to 3.0 by the conclusion of the Spring 2023 semester or face academic suspension; (4–5) communications from the University's Office of the Registrar notifying Mansoor that she received a "scholastic warning" due to her low GPA; (6) a December 16, 2022 email from the Student Conduct and Academic Integrity Office coordinating the hearing on Mansoor's appeal and agreeing that her "grade should be an incomplete for the time being"; and (7) a February 26, 2023 email from the Executive Director of the Student Conduct and Integrity Office to Mansoor, directing her "to immediately stop further communication with the appeals team" responsible for reviewing the allegations of misconduct.

In her response, Mansoor generally argued that sovereign immunity does not allow the government to breach its obligations under a written contract. She also argued that she had "a right [to] a fair and justified [a]cademic investigative process."

The trial court heard argument on the University's plea to the jurisdiction and, after taking the matter under advisement, ultimately granted it and dismissed Mansoor's claims with prejudice. This appeal followed.

## DISCUSSION

### Standard of Review

"Sovereign immunity requires the state's consent before it can be sued." *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017). "In the absence of the State's consent to suit, a trial court lacks subject-matter jurisdiction." *Bonham v. Texas Dep't of Crim. Just.*, 101 S.W.3d 153, 156 (Tex. App.—Austin 2003, no pet.). "The State's sovereign immunity extends to various divisions of state government, including agencies, boards, hospitals, and universities." *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Texas Pol. Subdivs. Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 324 (Tex. 2006). Thus, as a state university, the University enjoys sovereign immunity from suit. *See Texas S. Univ. v. Villarreal*, 620 S.W.3d 899, 904 (Tex. 2021).

"A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). "A jurisdictional plea may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). "When, as in this case, a jurisdictional plea challenges the plaintiff's pleadings, the Court determines whether the plaintiff has alleged facts that affirmatively demonstrate a court's

4

jurisdiction to hear the cause." *Texas Tech Univ. Sys. v. Martinez*, 691 S.W.3d 415, 419 (Tex. 2024); *see Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012) ("The burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction.").

"We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). "The allegations found in the pleadings may either affirmatively demonstrate or negate the court's jurisdiction." *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009). "If the pleadings do neither, it is an issue of pleading sufficiency and the plaintiff should be given an opportunity to amend the pleadings." *Id.* Additionally, "a court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and *must* do so when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555 (emphasis added). "[W]e review *de novo* whether a plaintiff has alleged or offered undisputed evidence of facts that establish jurisdiction." *Villarreal*, 620 S.W.3d at 905.

**Analysis**

**Breach of Contract Claim**

Mansoor's petition alleges that the University and its officials breached three different contracts, resulting in harm to Mansoor. Even if true, "[o]nly the Legislature can waive sovereign immunity from suit in a breach-of-contract claim." *Texas Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 858 (Tex. 2002). And because it was her burden to affirmatively demonstrate jurisdiction, Mansoor was required in her petition to "establish the state's consent, . . . either by reference to a statute or to express legislative permission." *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). In her complaint, Mansoor did neither.

5

Nevertheless, both on appeal and below, Mansoor argues that breach-of-contract claims are not categorically barred by sovereign immunity. In support of this argument, Mansoor cites several cases, none of which are applicable to the facts at hand. For instance, Mansoor cites *City of Denton v. Rushing*, 570 S.W.3d 708 (Tex. 2019), and *Hays St. Bridge Restoration Grp. v. City of San Antonio*, 570 S.W.3d 697 (Tex. 2019), arguing that these cases demonstrate that § 271.152 of the Texas Local Government Code waives sovereign immunity for the breach-of-contract claim in this case. But by its terms, Local Government Code § 271.152 waives immunity only for "local governmental entit[ies]" that enter into and breach certain contracts. Tex. Loc. Gov't Code § 271.152. The Local Government Code excludes from the definition of the term "local governmental entity . . . a unit of state government, as that term is defined by Section 2260.001, Government Code." *Id.* § 271.151(3). And § 2260.001(4) of the Government Code defines "unit of state government" to include "a university system or institution of higher education." Tex. Gov't Code § 2260.001(4). Thus, because the University is an institution of higher education, we conclude that § 271.152 of the Local Government Code does not waive its sovereign immunity.

Mansoor also cites *Engelman Irrigation District v. Shields Bros., Inc.*, 960 S.W.2d 343, 348 (Tex. App.—Corpus Christi–Edinburg 1997, pet. denied) (op. on reh'g), in which our sister court of appeals held that the legislature unambiguously waived an irrigation district's sovereign immunity via a now-repealed statute in the water code. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 715, § 47, 1995 Tex. Gen. Laws 3755, 3803 (repealing § 58.098 of the Water Code). Even if the statute applicable in that case was still on the books, the University is not a water irrigation district subject to its parameters. *See Engelman Irr. Dist.*, 960 S.W.2d at 348 (holding that § 58.098 of the Water Code waived immunity for irrigation districts).

6

The other cases that Mansoor cites either do not involve breach-of-contract claims or are cases in which the court concluded that the breach-of-contract claim was barred by sovereign immunity. *See Goss v. Lopez*, 419 U.S. 565, 581 (1975) (due-process clause of federal constitution requires certain procedures prior to suspension from public school for misconduct); *Dixon v. Alabama State Bd. of Educ.*, 294 F.2d 150, 158 (5th Cir. 1961) (Due Process Clause did not require notice or hearing prior to student's expulsion from university for misconduct), *abrogated by Walsh v. Hodge*, 975 F.3d 475, 487 (5th Cir. 2020); *University of Tex. at Arlington v. Williams*, 459 S.W.3d 48, 57 (Tex. 2015) (Texas Tort Claims Act (TTCA) did not waive sovereign immunity for premises-liability claim); *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) (employment-related claims brought under TTCA were barred by sovereign immunity but were properly brought under Texas Commission on Human Rights Act); *IT-Davy*, 74 S.W.3d at 860 (concluding that because private party did not have legislative consent to sue State for claims arising from an alleged breach of contract, immunity barred suit); *University of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 928 (Tex. 1995) (Texas's due-course-of-law clause requires notice and opportunity to be heard "when university officials seek to sanction a student for misconduct"); *University of Hous. v. Sabeti*, 676 S.W.2d 685, 689 (Tex. App.—Houston [1st Dist.] 1984, no writ) (university student was not denied due process when his attorney was not permitted to speak during expulsion hearing); *Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) (university's sovereign immunity was not waived for breach-of-contract claim).

"[T]here is but one route to the courthouse for breach-of-contract claims against the State, and that route is through the Legislature." *IT-Davy*, 74 S.W.3d at 860 (quoting *General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 597 (Tex. 2001), *superseded by statute*

*on other grounds*, *In re City of Galveston*, 622 S.W.3d 851, 859 n.34 (Tex. 2021) (orig. proceeding)). Because the Legislature has not waived the University's immunity for the alleged breach of contract here, we conclude that the trial court properly granted the University's plea to the jurisdiction as to Mansoor's breach-of-contract claim. Additionally, "[r]emanding this case would serve no legitimate purpose" as Mansoor's "underlying claim is a breach of contract claim. Merely pleading more facts in support of the breach of contract claim will not overcome [the University's] immunity from suit." *See Koseoglu*, 233 S.W.3d at 840.

**Remaining Claims**

Mansoor also argues that the University's immunity was waived because it: (1) discriminated against her in violation of Title IV of the Civil Rights Act of 1964; (2) failed to provide adequate notice and hearing in contravention of the Administrative Procedure Act; (3) retaliated against her for bringing the underlying lawsuit; and (4) violated the Due Process Clause of the Fourteenth Amendment. The University argues that Mansoor did not raise these claims below.

"When determining whether a pleading properly includes an allegation, we must look at the pleading from the perspective of the person against whom the pleading is made." *Wilson v. Bloys*, 169 S.W.3d 364, 369 (Tex. App.—Austin 2005, pet. denied). "Pleadings must give fair notice of the nature and basic issues so the opposing party can prepare a defense." *Bos v. Smith*, 556 S.W.3d 293, 305–06 (Tex. 2018).

Mansoor is a pro se litigant, both in the underlying proceedings and on appeal. We "review and evaluate pro se pleadings with liberality and patience." *Li v. Pemberton Park Cmty. Ass'n*, 631 S.W.3d 701, 706 (Tex. 2021) (quoting *Corona v. Pilgrim's Pride Corp.*, 245 S.W.3d 75,

78 n.3 (Tex. App.—Texarkana 2008, pet. denied)). Nevertheless, a pro se litigant is still required to follow the same rules as litigants represented by counsel. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978). And "courts 'cannot use a liberal construction of the petition as a license to read into the petition a claim that it does not contain.'" *Martinez*, 691 S.W.3d at 419 (quoting *Flowers v. Flowers*, 407 S.W.3d 452, 458 (Tex. App.—Houston [14th Dist.] 2013, no pet.)).

We agree that Mansoor did not adequately raise a claim under Title IV of the Civil Rights Act of 1964 or a claim of retaliation in the trial court. Nowhere below did she make any allegation of discrimination or retaliation. *See id.* We also agree with the University that, even if Mansoor had raised a claim under the Administrative Procedure Act, sovereign immunity would nonetheless bar such a claim, as such claims are not properly brought against "institution[s] of higher education," like the University. *See* Tex. Gov't Code § 2001.003(7)(E).

Further, Mansoor is not entitled to remand to plead these unpleaded claims. "[T]he right to amend typically arises when the pleadings fail to allege enough jurisdictional *facts* to demonstrate the trial court's jurisdiction." *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 559 (Tex. 2016) (emphasis added). "Generally, remand is a mechanism for parties, over whose claims the trial court may have jurisdiction, to plead facts tending to establish that jurisdiction, not for parties, over whose claims the trial court does not have jurisdiction, to plead new claims over which the trial court does have jurisdiction." *Id.* Mansoor does not seek to plead new facts under the same claims; she seeks to plead new claims entirely. Therefore, remand is not appropriate under these circumstances. *See id.*

However, we do not agree that Mansoor failed to raise a due-process claim below. Although she did not use the specific phrase "due process" in her petition, "[a] plaintiff is required

to plead facts invoking a waiver of immunity, not to use particular words." *See Morales v. Barnett*, 219 S.W.3d 477, 481 n.3 (Tex. App.—Austin 2007, no pet.) (citing *University of N. Tex. v. Harvey*, 124 S.W.3d 216, 223 n.3 (Tex. App.—Fort Worth 2003, pet. denied)); *In re J.Z.P.*, 484 S.W.3d 924, 925 (Tex. 2016) (per curiam) ("We have stressed that 'courts should acknowledge the substance of the relief sought despite the formal styling of the pleading.'" (quoting *Ryland Enter., Inc. v. Weatherspoon*, 355 S.W.3d 664, 666 (Tex. 2011) (per curiam)).

Mansoor alleged in her petition that "the whole student misconduct investigation was an unfair and unjustified *process*." (Emphasis added.) She argued that her "grades were pre-determined, and [she] was even placed on [a]cademic probation way before the official investigation was completed." At the hearing on the University's plea, Mansoor argued "that students have a legitimate entitlement to a public education as a property right" and "[t]hat right may not be taken away without first providing due process protections." The University did not object to Mansoor's argument below. Indeed, it raised the procedural due process issue in its plea to the jurisdiction, acknowledging that it was "her most likely alternative path" if the trial court allowed her the opportunity to replead. *See County of Hidalgo v. Perez*, No. 13-22-00312-CV, 2023 WL 2807216, at *3 (Tex. App.—Corpus Christi–Edinburg Apr. 6, 2023, no pet.) (mem. op.) (concluding that plaintiffs adequately pleaded facts invoking potential of waiver of sovereign immunity where county raised the TTCA as a "potentially applicable waiver in its plea" and plaintiffs "confirmed in their response to the plea and during the jurisdictional hearing that they were relying on" the TTCA).

However, although we conclude that Mansoor pleaded a due-process claim, we further conclude that she did not plead an *actionable* due-process claim. *See Matzen v. McLane*, 659 S.W.3d 381, 389 (Tex. 2021). "A two-part test governs a procedural due process claim: a court

10

must determine whether the petitioner possesses 'a liberty or property interest that is entitled to procedural due process protection' and, if so, 'what process is due.'" *Bailey v. Smith*, 581 S.W.3d 374, 389 (Tex. App.—Austin 2019, pet. denied). Unlike suspensions or dismissals of a purely academic nature, "[c]ourts frequently conclude that disciplinary suspensions and dismissals carry sufficient stigma to implicate a protected liberty interest." *Villarreal*, 620 S.W.3d at 906 (first citing *Goss*, 419 U.S. at 575; and then citing *Doe v. Miami Univ.*, 882 F.3d 579, 599–600 (6th Cir. 2018)). But notably, Mansoor was not suspended or dismissed for any misconduct at the time she filed suit. She merely received a zero on an examination a semester earlier than expected, resulting in her facing academic jeopardy for a low GPA. Even if this could potentially result in a future suspension or dismissal, "[t]he question is not whether additional, hypothetical facts could come to light that would, in the future, allow [her] to . . . invoke an exception to, or waiver of, sovereign immunity." *See Matzen*, 659 S.W.3d at 389. The question is whether she invoked such an exception at the time she filed suit. *See id.*

To conclude that Mansoor could proceed with her due-process claim would require a conclusion that an institution of higher education could not impose any interim sanctions while an investigation into misconduct was pending. Aside from the University's own policies, which are not constitutional guarantees, Mansoor points to no authority suggesting this is what the Due Process Clause requires. *See Texas Tech Univ. Health Scis. Ctr. v. Enoh*, 545 S.W.3d 607, 624 n.13 (Tex. App.—El Paso 2016, no pet.) ("The procedural due process inquiry . . . focuses on what is constitutionally required, and not whether particular written policies were followed."); *L.C. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-07-00055-CV, 2009 WL 3806158, at *4 (Tex. App.—Austin Nov. 13, 2009, no pet.) (mem. op.) ("[T]hat the Department violated its internal procedures . . . is not evidence of a due process deprivation.").

11

Even if Mansoor had a constitutionally protected interest in not receiving a zero on her midterm exam, we conclude that Mansoor is not entitled to any additional procedural protections than what she received. "Courts should tread lightly in fashioning remedies for due process violations that affect the academic decisions of state-supported universities." *Texas A&M Univ. v. Hole*, 194 S.W.3d 591, 593 n.1 (Tex. App.—Waco 2006, pet. denied). Indeed, the Supreme Court has explained that "the decision of an individual professor as to the proper grade for a student in his course . . . is not readily adapted to the procedural tools of judicial or administrative decision making." *Board of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1978). "A university is an academic institution, not a courtroom or administrative hearing room, and thus should not be weighted down with formalized procedural requirements imposed by actors estranged from the academic environment." *Than*, 901 S.W.2d at 931 (citation modified). The due process clause "merely guards against the risk of unfair dismissal or suspension if that may be accomplished without prohibitive cost or interference with the educational process." *Id.*

Here, the University's Student Conduct and Academic Integrity Office had an informal meeting with Mansoor to determine whether she had committed plagiarism. The administrative-disposition form that was provided to Mansoor before she received a zero clearly outlines the charges against Mansoor and the evidence the governing body considered. Mansoor acknowledges that, following receipt of this form, she attended a formal hearing and had the opportunity to present her side of the story. *See Goss*, 419 U.S. at 581 (for disciplinary suspensions of ten days or less, due process clause "requires . . . that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story"). Although she disputes the extent to which the governing body fairly considered the evidence she presented, she does not dispute that

she was allowed the opportunity to present such evidence. Because Mansoor has already received any due-process protections to which she was entitled, we conclude that Mansoor has not alleged an actionable violation of the Due Process Clause and that, therefore, sovereign immunity was not waived. *See Villarreal*, 620 S.W.3d at 910.

Accordingly, we conclude that the trial court properly granted the University's plea to the jurisdiction, and we overrule Mansoor's sole issue on appeal.

## CONCLUSION

We affirm the trial court's judgment.

 

 

_____

Maggie Ellis, Justice

Before Justices Kelly, Crump, and Ellis

Affirmed

Filed:   July 23, 2025

13